# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

**METROPOLITAN LIFE
INSURANCE COMPANY,**

CASE NO. 3:03-cv-670 3-32 TeM

           **Plaintiff,**

**v.**

**DAVID M. LEVINE, as CONSERVATOR of
FUTURE FIRST FINANCIAL GROUP, INC.;
FUTURE FIRST FINANCIAL GROUP, INC.;
THE FIDELITY TRUST; DAVID FOOTE;
SMICO & CO., BARBARA GAUGHAN;
MICHAEL MORAN and JEAN MORAN;
SEAN BARRETTSMITH; JAMES RICCI and
FLORENCE RICCI; HENRY HOGEDA and
OFELIA HOGEDA; JOHN E. JONES; LILLIAN
EDGE and NORMAN EDGE; CARL ERNST
and SHARON ERNST; LEONARD ZINNI;
LAINA E. MARTIN;**



           **Defendants.**

_____/

## COMPLAINT FOR INTERPLEADER

Defendant, Metropolitan Life Insurance Company ("MetLife"), a foreign corporation, by and through its undersigned counsel, hereby sues the defendants: David M. Levine as Conservator of Future First Financial Group, Inc.; Future First Financial Group, Inc.; The Fidelity Trust; David Foote; Smico & Co., Barbara Gaughan; Michael Moran and Jean Moran; Sean Barrettsmith; James Ricci and Florence Ricci; Henry Hogeda and Ofelia Hogeda; John E. Jones; Lillian Edge and Norman Edge; Carl Ernst and Sharon Ernst; Leonard Zinni; and Laina E. Martin for Interpleader, and alleges:

1.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1335, 28 U.S.C. § 1332, and Federal Rule of Civil Procedure 22, because:  (a) the action is a federal question case concerning employee benefits, namely life insurance proceeds, governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*; (b) the amount at issue exceeds $75,000.00; and (c) complete diversity exists between MetLife and the Defendants.

2.     This action involves the entitlement to group life insurance benefits arising from the death of Paul David Paxton, a retired employee of Ohio Bell, now owned by SBC Communications, Inc. ("SBC"), which in turn was formerly known as "Ameritech." Mr. Paxton died on October 19, 2002 in Zanesville, Ohio.  The employment benefits at issue arise from supplementary life insurance benefits in the amount of $170,000.00 (referred to herein as "Supplementary Life Benefits"), obtained by Decedent Paul David Paxton through his employer, and administered by MetLife.  A copy of the ERISA Summary Plan Description ("SPD") which governs these benefits is attached hereto as Exhibit "A".  It is entitled, "Using The Ameritech Life Insurance Program."  Also attached as Exhibit "B" are the SBC Rules for Employee Beneficiary Designations.

3.     Paul David Paxton, Decedent, whose death generated the Supplementary Life Benefits, was a resident of Franklin County, Ohio at the time of his death on October 19, 2002.

4.     MetLife is a New York insurance corporation licensed to conduct and conducting business in Florida, Ohio, and other states.  MetLife insures and administers the claim for Supplementary Life Benefits, the proceeds of which constitute the

2

Supplementary Life Benefits.  MetLife holds the Supplementary Life Benefits, claims no interest in them or any portion thereof, and is a disinterested stakeholder.

5.      Future First Financial Group, Inc. ("Future First") is a Florida corporation whose principal place of business is in Jacksonville, Florida.  It was in the viatical provider business until its license was revoked by the Department of Insurance of the State of Florida by order of the Department dated May 17, 2002.   The Fidelity Trust is believed to be a trust controlled by or affiliated with Future First.   On August 9, 2002 an Order Appointing Conservator for Future First was entered by the 7th Judicial Circuit in and for St. Johns County, Florida.  A copy of this Order is attached as Exhibit "C".  The Order appointed David M. Levine as Conservator of Future First, and authorized the Conservator to take immediate possession of all Conservatorship Assets.   The Assets include life insurance proceeds owned or held by "The Fidelity Trust" (See Eg. page 5 of the attached Order, paragraph 1.(a)).

6.      David M. Levine as Conservator (hereinafter "Conservator") of Future First has made demands upon MetLife for payment of the Supplementary Life Benefits at issue based upon Viatical Absolute Assignments to The Fidelity Trust and the attached Order.  A copy of the Conservator's claim request letter dated January 17, 2003, without enclosures, is attached hereto as Exhibit "D".  This letter sets forth the Conservator's position in detail, including request for payment of Supplementary Life Benefits to The Fidelity Trust "on behalf of the beneficiaries indicated in your records."   The Conservator subsequently contacted MetLife with demands for payment.

7.     MetLife is unsure of the proper beneficiaries of the Supplementary Life Benefits, and is or may be exposed to double liability.

8.     MetLife received from SBC a record of assignments for the Supplementary Life Benefits, dated March 25, 1999, which appears to be executed by the Decedent, Paul David Paxton, to The Fidelity Trust.  A copy is attached as Composite Exhibit "E".  The assignment states, "Please See Attached Schedule," in the space allotted for the name(s) of the assignee's beneficiaries.

9.     A beneficiary designation form, dated March 26, 1999, attached with Composite Exhibit "E", appears to be the "attached schedule" referred to in the assignment.  It lists 16 individuals and one corporate entity for the beneficiaries under this viatical assignment as follows:

**David Foote** (8.39%) of Denver, Colorado;

**Smico & Co.** (5.01%) of Smith Cienter, Kansas;

**Barbara Gaughan** (6.35%) of Singer Island, Florida;

**Michael Moran and Jean Moran** (4.18%) of Omaha, Nebraska;

**Sean Barrettsmith** (4.18%) of Davenport, Iowa;

**James Ricci and Florence Ricci** (6.68%) of Providence, Rhode Island;

**Henry Hogeda and Ofelia Hogeda** (20.88%) of San Angelo, Texas;

**John E. Jones** (15.13%) of Omaha, Nebraska;

**Lillian Edge and Norman Edge** (8.35%) of Virginia Beach, Virginia;

**Carl Ernst and Sharon Ernst** (4.18%) of Greenacres, Florida;

**Leonard Zinni** (4.18%) of Palm Beach, Florida; and

4

**Laina E. Martin** (12.53%) of Denver, Colorado.

Note that this does not add up to 100%. Instead the total percentages add up to 100.04%, and thus, there must be some type of error, albeit small, in one or more of these beneficiary listings. MetLife cannot determine, however, the source of the error, and thus does not know the intended allocation among these 17 beneficiaries.

10. By its letter to MetLife dated January 17, 2003, Future First attempted to collect the Supplementary Life Benefits proceeds on behalf of the 16 individuals and one corporate entity named above, and provided MetLife with: (a) the Court Order appointing David M. Levine, as Conservator for The Future First Financial Group, Inc. and The Fidelity Trust, by the 7th Judicial Circuit Court in and for St. Johns County, Florida (Exhibit "C"), (b) Beneficiary's Life Insurance Claim Statement (c) Certificate of Death of Paul David Paxton, (d) Authorization by Conservator, and (e) executed copies of Limited Power of Attorney Non-Qualified Funds from 12 of the 17 beneficiaries named in paragraph 9 above, to The Fidelity Trust & Trustee (attached as "Composite Exhibit "F").

11. The Powers of Attorney on their face are limited and only provide The Fidelity Trust with the authority to file a claim on the beneficiaries' behalf. They do not provide the Trust with an assignment of the proceeds, nor do they authorize the Trustee to collect the benefits for the beneficiaries. In any event, the Powers of Attorney provided by Future First are incomplete. They have not been executed by all of the persons previously listed as the beneficiaries under the viatical assignment. The following beneficiaries listed were not included in the Powers of Attorney submitted by Future First: David Foote, Smico & Co., Jean Moran, Norman Edge, and Laina E. Martin.

12.     The Conservator claims that Future First is filing the claim for Supplementary Life Benefits on behalf of the 16 individuals and one corporate entity named in paragraph 9, above, and makes demand upon MetLife to now make full payment to it, rather than any of the named beneficiaries in paragraph 9.  The Conservator admittedly has no personal knowledge of the transactions which all occurred prior to the Conservator's appointment, but still claims that the change in beneficiary for the Supplementary Life benefits is valid.  Moreover, the Conservator contends that the Order of the State Court (Exhibit "C") requires MetLife, acting as the ERISA claims administrator under federal law for the employer, SBC, to make payment of these employee death benefits to the Conservator, even though the terms of the ERISA Plan itself do not.

13.     The Conservator has made repeated demands for payment of the $170,000.00 benefits, but refuses to provide MetLife with any assurances that the beneficiaries listed in paragraph 9, above, will not also claim entitlement to the proceeds. Moreover, the Conservator has been unable or unwilling to provide releases from these beneficiaries as requested by MetLife before making payment of the $170,000.00 in proceeds to the Conservator.

14.  The 16 individuals and one corporate entity, may have a right to payment of their designated share of the $170,000.00 in Supplementary Life Benefits under the Assignment (Exhibit "E").  Under the terms of the viatical assignments, and the ERISA Plan (Exhibits "A" and "B"), these 17 beneficiaries appear to be the proper beneficiaries to whom MetLife, as ERISA Claims Administrator, is required by federal law to make direct

6

payment to.  Still, the Conservator for the viatical company claims that the State Order (Exhibit "C") governs, and requires MetLife to deviate from the terms of the Plan, and make direct payment to the Conservator.

15.     Because of the above, MetLife is exposed to multiple liability with respect to the Supplementary Life Benefits, and is exposed to the potential for vexatious litigation with respect to the Supplementary Life Benefits.

16.     MetLife asserts no interest in any portion of the Supplementary Life Benefits and is a disinterested stakeholder.

17.     To summarize the above allegations this interpleader is required because of the following facts and circumstances:

A. The viatical assignments to 17 different beneficiaries do not add up to 100%.

B. The Limited Powers of Attorney do not provide The Fidelity Trust with the authority to receive the benefits, only to file a claim for the beneficiaries.

C. The Limited Powers of Attorney have been executed by only 12 of the 17 beneficiaries.

D. The state law and state Court Order upon which the Conservator bases his exclusive claim to these benefits may be preempted by the federal law of ERISA which does not permit MetLife as Claims Administrator to deviate from the terms of the ERISA Plan documents.

18.     MetLife has retained the undersigned attorneys to represent it in this matter and is obligated to pay them a reasonable fee for their services.  As a disinterested

7

stakeholder, MetLife is entitled to receive its attorney fees and costs from the interpleaded Supplementary Life Benefits.

      19.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 (a, b).

      20.     All conditions precedent to this action have occurred or been performed.

      WHEREFORE, MetLife prays that this Court take jurisdiction over this matter, and issue an order or orders:

      (1)     granting MetLife's claim for Interpleader;

      (2)     permitting and directing MetLife to deposit the Supplementary Life Benefits in the amount of $170,000.00, less fees and costs awarded to MetLife, into the Registry of the Court;

      (3)     granting MetLife's judgment for its reasonable fees and costs to be paid from the interpleaded Supplementary Life Benefits;

      (4)     granting MetLife an injunction barring all Defendants, and their successors and assigns, from instituting any action against MetLife with respect to the Supplementary Life Benefits, after MetLife deposits the Supplementary Life Benefits into the Registry of the Court;

      (5)     dismissing MetLife from this action; and

      (6)     requiring Defendants to proceed in this action to determine the proper disposition of the Supplementary Life Benefits.

      Respectfully submitted this 12th day of August 2003.

 

_____

RALPH C. LOSEY
Florida Bar No. 0296414
Katz, Kutter, Alderman & Bryant, P.A.
111 N. Orange Avenue, Suite 1400
Orlando, FL  32801
Phone (407) 841-7100
Fax (407) 648-0660
Attorneys for Plaintiff
Metropolitan Life Insurance Company

A

# Using The Ameritech Life Insurance Program



Helping You

Manage

And

Plan

# Using This Handbook

The Ameritech Life Insurance Program (the "Program") is an important part of your total compensation. The Program, which includes Basic Life, Accidental Death and Dismemberment, Special Accident, Supplementary Life, and Dependent Life Insurance benefits, was designed to provide you and your dependents with a number of life insurance options.

This is a guide to using the Ameritech Life Insurance Program. The handbook is set up so you can find the answers to your questions about the Program quickly. In the next two sections, you'll find two helpful guides: "Finding The Information You Need" and "What You Need To Know About This Program." "Finding the Information You Need" will tell you where you can find detailed information about the Program. "What You Need To Know About This Program" highlights the Program basics.

There are other easy ways for you to find information. Throughout this handbook, you'll find icons that identify important information about the Program, including examples and important facts. The following legend shows you what each icon represents:

 **Defines words and concepts that are important to the Program**

 **Shows examples that can help you understand how the Program works**

 **Calls your attention to information that you may not know about the Program**

 **Highlights information that applies to any dependents you may have**

 **Indicates information to which you should pay special attention**

 **Explains where you can call if you have questions about the Program**

*Using This Handbook (cont.)*

Each example features fictional Ameritech employees, Samuel and Angela.  Throughout this and other benefit handbooks, these characters will be used to show how you can make the most of your benefits.  Although your personal situation may differ from Samuel's and Angela's, the examples may help you decide how the Program can provide security in difficult times.

Please read this handbook carefully.  Understanding what the Life Insurance Program offers will help you take advantage of what it provides and get the most out of your total compensation package.

### About This Handbook

*This handbook is your summary plan description (SPD) for the Ameritech Life Insurance Program (the "Program") originally effective January 1, 1984 with changes reflected as of January 1, 1997, which consists of Basic Life Insurance, Accidental Death and Dismemberment, Special Accident, Supplementary Life Insurance, and Dependent Life Insurance benefits. Throughout this handbook, "Company" will be used to refer to the Ameritech Family of Companies. "Ameritech" will be used to refer to Ameritech Corporation.*

*In addition to this handbook, refer to the* Administrative Information Handbook *for information on:*
- *extending coverage through COBRA*
- *qualified medical child support orders (QMCSOs)*
- *amending or terminating the Plan*
- *your rights under the Employee Retirement Income Security Act of 1974 (ERISA)*

*Along with the information listed above, some details of the Program are not included in this handbook.  If there are any discrepancies between the information in this SPD and the actual plan document or applicable laws and regulations, the plan document and such laws and regulations will be the final authority.*

*Ameritech reserves the right to amend or terminate the Program at any time, subject to any applicable collective bargaining agreements for non-management employees.*

2

# Finding The Information You Need

**Using This Handbook** ......................... 1

**What You Need To Know About This Program** ..... 4

**Your Basic Life Insurance: Basic Life, Accidental Death And Dismemberment, And Special Accident Insurance** ............................. 9
Who Is Eligible? ...................... 9
How To Enroll ........................ 9
Who Pays For Your Coverage? .......... 9
When Coverage Begins ................ 9
How To Claim Your Benefits .......... 10
When Coverage Ends ................ 10
If You Are On An Approved Leave Of Absence ........................ 10
If You Retire ....................... 10

*Basic Life Insurance* .................. 10
What Is The Coverage Amount? ........ 11
How To Claim Basic Life Benefits ...... 13
How Benefits Are Paid ............... 13
If A Beneficiary Dies Before You....... 14
If You Go On An Approved Leave Of Absence Or Are Laid Off .......... 14
If You Become Disabled ............. 14
If You Are Diagnosed With A Terminal Illness ..................... 15

*Accidental Death And Dismemberment Coverage (AD&D)* ..................... 16
What Is The Coverage Amount? ....... 16
How To Claim AD&D Benefits ........ 17
How Benefits Are Paid ............... 17
When Benefits Are Not Paid .......... 18
If A Beneficiary Dies Before You....... 18
If You Become Disabled ............. 18

*Special Accident Insurance*............. 18
What Is The Coverage Amount? ....... 19
How To Claim Benefits............... 20
How Benefits Are Paid ............... 20
If You Are In A Job-Related Accident.... 21
If Your Spouse Dies ................. 22
If You Go On An Approved Leave Of Absence Or Are Laid Off .......... 22

When Benefits Are Not Paid .......... 22
When Coverage Ends................. 22

**Your Supplementary Life Insurance And Dependent Life Insurance Benefits** ........................ 23
Who Is Eligible?.................... 23
How Do I Enroll?................... 23

*Supplementary Life Insurance* .......... 24
When Coverage Begins .............. 24
What Is The Coverage Amount? ....... 24
What Do I Pay? .................... 24
How Benefits Are Paid .............. 26
When Coverage Ends................ 26
If You Are On An Approved Leave Of Absence Or Are Laid Off .......... 26
If You Become Disabled ............. 26
If You Retire ..................... 27
If You Are Diagnosed With A Terminal Illness .................... 27

*Dependent Life Insurance*.............. 28
Who Is Covered? ................... 28
When Coverage Begins .............. 29
What Do I Pay? .................... 29
How Benefits Are Paid ............. 31
When Coverage Ends................. 32
If You Are On An Approved Leave Of Absence Or Are Laid Off .......... 32

**If You Want To Assign Your Life Insurance** ................................ 33

**Converting Your Coverages To An Individual Policy** ......................... 34
How To Convert Coverage ........... 34
If Your Program Coverage Ends ........ 34
Converting Your Dependent Life Insurance .................... 34

**How To File A Claim** ......................... 35

**Administrative Information** .................... 35

3

# What You Need To Know About This Program

The Life Insurance Program can provide important benefits for you and your dependents. The Program consists of five benefits:

- Basic Life Insurance
- Accidental Death and Dismemberment Insurance
- Special Accident Insurance
- Supplementary Life Insurance
- Dependent Life Insurance

Together, these benefits can provide financial protection for your dependents should you die or should you lose your sight or a limb due to an accident. The Life Insurance Program also includes the option to purchase life insurance coverage for your spouse and other dependents. This option increases the flexibility of your benefit package and can provide financial support to you should a dependent die before you.

*Understanding the Life Insurance Program doesn't take much. Just read through the table that follows and you'll find the basic information you need to know about the Ameritech Life Insurance Program. If you're looking for more detailed information, the table of contents on the previous page can help you find it.*

## When Am I Eligible?

If you are a regular full-time, part-time, or term employee, you are eligible to participate in *Basic Life* and *Accidental Death and Dismemberment* (AD&D) on the first day of the month in which you complete six months of service. Retired employees who are on a service or disability pension under the Ameritech Pension Plan or who were management employees who meet the "Rule of 75" requirements (your age plus your years of service is at least 75) are eligible for Basic Life Insurance coverage.

Your *Special Accident Insurance* coverage begins on the date of your employment if you are a regular full-time, part-time, or term employee.

You are eligible for the *Supplementary Life* and *Dependent Life Insurance* coverage on the first day of the month in which you complete six months of service if you are a regular full-time, part-time, or term employee.

Some Ameritech Companies may have a different requirement of service for eligibility. In this case, affected employees will be notified in writing.

*Please note: Corporate Resource Managers covered by the Key Management Life Insurance Plan are not eligible for Basic or Supplementary Life Insurance, but are eligible for AD&D, Dependent Life, and Special Accident Insurance.*

4

## How Do I Enroll?

You do not have to enroll to receive Basic Life, AD&D, and Special Accident Insurance coverage for yourself. You will automatically be enrolled as soon as you are eligible for these benefits.

If you want to purchase Supplementary Life Insurance for yourself or Dependent Life Insurance for your dependents, you may enroll for coverage within 31 days after your hire date or a qualifying event, or during open enrollment. If you do not elect coverage when first eligible (within 31 days after your hire date or a qualifying event), you and your dependents must provide evidence of insurability to enroll at a later time.

## What Is A Qualifying Event, And What Does It Mean To Me?

Under the Program, if you have a qualifying event, you are eligible to change your enrollment election during the course of the year. Examples of qualifying events include:

- marriage or divorce
- gaining a dependent (through birth, adoption of a child, or addition of a stepchild)
- changes in your or your spouse's employment
- losing a spouse, child, or other dependent (through death or loss of dependent status)

The Life Insurance Program offers you flexibility to change your enrollment election in these situations. However, the change must be consistent with the qualifying event. Once an election has been made, you cannot change your enrollment status unless you experience a qualifying event or until the next open enrollment period.



## What Type Of Coverage Does My Basic Life Insurance Include?

Basic Life Insurance includes Basic Life, AD&D, and Special Accident Insurance.

Your Basic Life and AD&D benefits provide coverage equal to one times your annual basic pay rounded up to the next $1,000. If you are a management employee, the Special Accident Insurance provides coverage equal to two times your annual basic pay. All other employees have coverage equal to three times your annual basic pay. If you earn less than $50,000 annually, the first $50,000 of Special Accident Insurance coverage is paid from the Ameritech Pension Plan and any amounts over $50,000 are paid by the Special Accident Insurance. If you earn more than $50,000 annually, one year's pay is paid from the Ameritech Pension Plan and any remaining amounts are paid by Special Accident Insurance.

## How Much Does Basic Coverage Cost Me?

Nothing. The Company pays for the entire cost of your Basic Life Insurance coverage.

## How Does Supplementary Life Insurance Work?

You can purchase additional life insurance for yourself in amounts equal to one to five times your Basic Life Insurance coverage. The cost of Supplementary Life Insurance is based on your age, salary, and amount of additional coverage you elect, and will be deducted automatically from your paycheck.

## Can I Access My Life Insurance If I Become Seriously Ill?

The Accelerated Benefit Option allows you to access a portion of your Basic Life or Supplementary Life Insurance benefit if you are diagnosed with a terminal illness and have a life expectancy of six months or less.



## Can I Purchase Life Insurance For My Dependents?

You can purchase life insurance coverage for your spouse, your spouse and children, or just your children. This insurance will pay a benefit to you if a covered dependent should die. The cost of coverage for your dependents is based on the level of coverage you choose. This cost will be deducted automatically from your paycheck.

6



## Who Are My Eligible Dependents?

Your eligible dependents are:

- your spouse

- your unmarried children until the end of the year in which they reach age 19 (or age 23 if they are full-time students)

- your unmarried children of any age who are incapable of self-support because of a mental or physical disability and are chiefly dependent on you for support

Children include your own children, children who are placed for adoption in your home, legally adopted children or stepchildren, and children for whom either you or your spouse is a legal guardian, provided the children live with you.

The following individuals are not eligible for dependent coverage:

- anyone who, when required to provide evidence of insurability, is unable to provide satisfactory evidence

- a child who is an employee of the Company

- anyone residing outside the United States or Canada unless such dependents reside with an employee outside the United States or Canada

- anyone who is a member of the military or similar forces of any country or subdivision of a country

- unborn or stillborn children

## How Do My Beneficiaries Or I Receive Benefits From The Program?

To collect benefits from the Program, you or your beneficiaries need to complete and return the appropriate claim forms (plus any necessary attachments) to the Ameritech Health Plans Service Center.

7

## How Do I Designate A Beneficiary?

In order to designate a beneficiary, you must complete a beneficiary designation form and return it to the Ameritech Health Plans Service Center. By completing this form, you identify who you want to receive your Basic Life, Supplementary Life, and AD&D Insurance benefits in the event of your death. Remember, you can designate more than one person or your estate as your beneficiary. If you want to change your beneficiary at any time, complete another beneficiary designation form and send it to the Ameritech Health Plans Service Center. The change will be effective the day the Ameritech Health Plans Service Center receives your completed form.



## Who Should I Call If I Still Have Questions?

If you have questions about enrollment, eligibility, or claims, call the Ameritech Health Plans Service Center at 800/223-2929.

8

# Your Basic Life Insurance:

## *Basic Life, Accidental Death And Dismemberment, And Special Accident Insurance*

If something should happen to you, your Basic Life Insurance provides you and your family with additional financial resources through Basic Life, Accidental Death and Dismemberment (AD&D), and Special Accident Insurance.

### Who Is Eligible?
Regular full-time, part-time, and term employees with six months net credited service are eligible to participate in Basic Life and AD&D.  Regular full-time, part-time, and term employees are eligible to participate in Special Accident Insurance on their date of employment.  Retired employees who are on a service or disability pension under the Ameritech Pension Plan or who were management employees who meet the "Rule of 75" requirements (your age plus your years of service is at least 75) can participate in Basic Life.

*Please note:  Corporate Resource Managers covered by the Key Management Life Insurance Program are not eligible for Basic Life, but are eligible for AD&D and Special Accident Insurance.*

### How To Enroll
On the first day of the month in which you complete six months of service, all regular full-time, part-time, and term employees are automatically enrolled in Basic Life and AD&D.  You are automatically enrolled in Special Accident Insurance on your date of hire.

### Who Pays For Your Coverage?
The Company pays the entire cost of your coverage under Basic Life, AD&D, and Special Accident Insurance.

### When Coverage Begins
For Basic Life and AD&D, your coverage begins on the first day of the month in which you complete six months of service.  Your Special Accident coverage will take effect on the date of your employment.

9

*Your Basic Life Insurance (cont.)*

### How To Claim Your Benefits

To claim your benefits under Basic Life, AD&D, and Special Accident Insurance, you or your beneficiary(ies) must complete and submit the appropriate claim forms to the insurance carrier. The Ameritech Health Plans Service Center will assist you or your beneficiary(ies) in filing any claims.

### When Coverage Ends

Your coverage under Basic Life Insurance generally ends on the last day of the month in which:

- your employment ends
- your insurance runs due to an extended disability or layoff period
- the Life Insurance Program is discontinued

### If You Are On An Approved Leave Of Absence

If you go on an approved leave of absence, other than for military service, you are eligible for Basic Life (excluding AD&D and Special Accident Insurance) coverage for up to 12 months. If you go on an approved union leave of absence, your coverage may extend for the entire leave.

### If You Retire

Retired employees are eligible for Basic Life (excluding AD&D and Special Accident Insurance).

 **DEFINITION** **RETIRED EMPLOYEE**

A retired employee is an employee who has retired from a participating Company (see the *Administrative Information Handbook* for a list of participating companies) under:

- the "Rule of 75" for management employees (the sum of your age plus your years of service is at least 75 upon your retirement), or
- the Ameritech Pension Plan (APP) with a service or disability pension.

## Basic Life Insurance

Basic Life Insurance (Basic Life) is available at no cost to all regular full-time, part-time, term, and retired employees. Should you become seriously ill or die, Basic Life can provide you and your family with financial security.

*Please note: Corporate Resource Managers covered under the Key Management Life Insurance Program are not eligible for Basic Life Insurance coverage.*

### What Is The Coverage Amount?

Basic Life coverage provides life insurance equal to one times your annual basic pay rounded up to the next $1,000. Therefore, when your pay increases, so does your Basic Life coverage amount. This new coverage amount is effective at the same time your pay increase is effective.

 **DEFINITION ANNUAL BASIC PAY**

**Your annual basic pay is determined by the Company and includes:**

- **annual rate of pay**
- **commissions**
- **certain bonuses, incentive, and merit awards**

**It does not include tour differentials, signing bonuses, Corporate Achievement/Success Sharing Plans, or any other differentials or bonuses considered extra payments.**

Once you reach age 66, your Basic Life coverage amount is reduced by 10% annually until you reach age 70. If you retire before turning 65, this reduction starts on your 66th birthday. If you are an active employee or retire at age 65, the 10% reduction begins on the first day of the month following your 66th birthday. Once you reach age 70, the reduction is no longer applied, but your total coverage amount is 50% less than it was on your 66th birthday.





*Basic Life Insurance (cont.)*



**How The Basic Life Reduction Works**

Samuel, a regular full-time employee, wants to know how his Basic Life coverage would change from age 65 to age 70. Samuel is 65 and still working. If he continued to work to age 70, the following chart shows how Samuel's Basic Life would be reduced.

| If Samuel Is . . . | Samuel's Basic Pay Would Be . . .* | Samuel's Basic Pay Rounded To The Next $1,000 | Samuel's Basic Life Benefits Are Reduced By . . . | Samuel's Payable Basic Life Benefit Would Be . . . |
|---|---|---|---|---|
| Age 65 but less than 66 | $31,300 | $32,000 | No Reduction | $32,000 |
| Age 67 but less than 68 | $33,200 | $34,000 | 20% | $27,200 |
| Age 69 but less than 70 | $37,500 | $38,000 | 40% | $22,800 |
| Retired | Not Applicable | $39,000 | 50% | $19,500 |

*Assumes an annual pay increase each year.

12

**How To Claim Basic Life Benefits**

When your beneficiary(ies) is eligible to receive your Basic Life benefits, they should notify the Ameritech Health Plans Service Center. The Center will send them claim forms and help file a claim with the insurance carrier. Once your beneficiary(ies) completes a Basic Life claim form, the insurance carrier will process the claim.

**How Benefits Are Paid**

Your beneficiary(ies) will receive the value of your Basic Life coverage should you die from any cause while covered under the Program.

Payments that are over $10,000 are directly deposited into a Total Control Money Market account by the life insurance carrier for your beneficiary(ies). This account allows your beneficiary(ies) to have control of and immediate access to the payment amount. Once the account is established, the insurance carrier will credit it with the appropriate interest. If your beneficiary(ies) wants to change to another account option, he or she should contact the life insurance carrier for more information before payment is made.

If the value of your Basic Life coverage is less than $10,000, your beneficiary(ies) will receive a lump sum check from the life insurance carrier. If you were retired at your time of death, your beneficiary(ies) may choose a different payment method offered by the insurance carrier.

 **DID YOU KNOW . . .**

*. . . that if your Basic Life payment amount is more than $10,000, the insurance carrier will automatically deposit the payment into a Total Control Money Market account? If your benefi-ciary(ies) wants to change this account option, they must contact the insurance carrier as soon as possible.*

*Basic Life Insurance (cont.)*



### If A Beneficiary Dies Before You

If one of your designated primary beneficiaries dies before you, your Basic Life coverage amount will be split into equal shares and paid to your remaining primary beneficiaries. If one of your designated contingent beneficiaries dies before you, your Basic Life benefits will be paid following the same guidelines. If a minor (a person not of legal age) or your estate is the beneficiary, it will be necessary to have a guardian or administrator appointed before any payments are made. If a guardian or administrator is not appointed, there could be court expenses for your beneficiary and a delay in the payment process.

If all your beneficiaries die before you, your Basic Life benefits may be paid, in the following order, to your spouse, child(ren), parent(s), or brother(s)/sister(s). If there is no surviving relative as listed, the benefits will be paid to your estate.

### If You Go On An Approved Leave Of Absence Or Are Laid Off

Basic Life coverage will continue for up to 12 months at no cost to you if you are on an approved leave of absence (excluding a military leave). If you are on an approved union leave of absence, your coverage may continue for your entire leave.

If you are a non-management employee and you were laid off from the Company, your coverage will continue for up to six months.

### If You Become Disabled

If you are totally disabled and not eligible for a disability or service pension or are a management employee who does not meet the "Rule of 75" requirements (your age plus your years of service is at least 75), your Basic Life coverage can continue.

If you receive benefits from the Sickness and Accident Disability Benefit Plan, your Basic Life coverage will continue as long as you receive disability benefits.

If you are totally disabled, as determined under the Long Term Disability Plan, and your Sickness and Accident Disability Plan benefits end, Basic Life coverage will continue at no cost to you for one to three years, depending on your years of service with the Company. The following chart explains the number of years of Basic Life coverage you'll receive based on your service.

| If Your Service Is . . . | Your Basic Life Coverage Continues For . . . |
| --- | --- |
| Under 5 years | 1 year |
| 5 years, but under 10 years | 2 years |
| 10 years, but under 15 years | 3 years |

If you are a non-management employee and have worked more than 15 years with the Company at the time of your disability, you are eligible for a service or disability pension, and therefore will receive Basic Life coverage as a retired employee. If you are a management employee and have worked more than 15 years with the Company at the time of your disability, your Basic Life coverage will continue.

### If You Are Diagnosed With A Terminal Illness



Basic Life Insurance offers an Accelerated Benefit Option for active and retired employees. This option provides you and your family with needed financial resources that help you meet expenses you incur before your death.

You can receive an early distribution of a portion of your Basic Life benefits through the Accelerated Benefit Option if you have been diagnosed with a terminal illness and have a life expectancy of six months or less. If you choose this option, you would receive at least $5,000 and up to 50% of your Basic Life benefit amount. To qualify for this option, you must submit your completed claim form and acceptable proof of your diagnosis, such as a letter from your physician confirming your illness and life expectancy, to the Ameritech Health Plans Service Center.

Receiving an early benefit payment may affect your eligibility for Medicaid or other government entitlement programs. In addition, the amount paid to you through the Accelerated Benefit Option will be deducted from your Basic Life coverage amount.

15

*If You Are Diagnosed With A Terminal Illness (cont.)*

Also, benefits paid in advance of your death could be considered taxable income. So, before choosing this option, you may wish to consult with a tax advisor for current information on federal and state tax laws regarding accelerated benefit payments.

If your Life Insurance benefits have been assigned to someone else through an absolute assignment, you or your assignee cannot receive benefits under the Accelerated Benefit Option.



**Using The Accelerated Benefit Option**

Angela, a regular full-time employee, wonders what her life insurance benefits would be if she were diagnosed with a terminal illness with a life expectancy of three months. If she becomes ill, Angela decides that she would receive an accelerated benefit payment from her Basic Life Insurance coverage in order to meet her increasing expenses. If Angela's claim for a quarter of her Basic Life benefits were approved, her sole beneficiary, her husband William, would receive a reduced benefit amount at the time of her death.

| | |
|---|---|
| Angela's Basic Life Benefit Amount: | $36,000 |
| Approved Accelerated Payment: | - $ 9,000 |
| **Basic Life Benefit Amount Payable To William:** | $27,000 |

# Accidental Death And Dismemberment Coverage (AD&D)

AD&D is provided at no cost to all active employees and covers accident-related deaths or loss of sight or limb from accidents occurring on or off the job.

**What Is The Coverage Amount?**

Your AD&D coverage is equal to the amount of your Basic Life coverage, or one year's annual basic pay rounded up to the next $1,000. Therefore, like your Basic Life coverage amount, your AD&D amount depends on your level of pay. When you receive a pay increase, your AD&D coverage amount increases the day your pay increase is effective. AD&D coverage is discontinued when you retire. However, if you continue working past age 65, you will still be covered, but at the reduced amount described in the Basic Life coverage section.

### How To Claim AD&D Benefits

When you or your beneficiary(ies) is eligible to receive AD&D benefits, you should submit written notice of the claim to the Ameritech Health Plans Service Center within 20 days of the accident or death. The Ameritech Health Plans Service Center will send you or your beneficiary claim forms and help in filing a proof of claim with the insurance carrier. Proof of claim must be submitted within 90 days of the accident or death. The time limit for this requirement may be waived if it is not reasonably possible for you to provide proof within 90 days. But proof must be submitted to the insurance carrier as soon as possible.

In addition to written proof, the insurance carrier reserves the right to have a doctor of its choice examine your injury before approving your claim.

After the insurance carrier receives all the necessary information, it will process the claim.

### How Benefits Are Paid

If you are in an accident (on or off the job) and, as a result, lose your sight or a limb, or die within 90 days of the accident, you or your beneficiary(ies) receive all or part of your AD&D insurance. The following chart explains how benefits will be paid.

| If You Lose . . . | You Or Your Beneficiary(ies) Will Receive . . . |
|---|---|
| One hand to the wrist, one foot to the ankle, or the irrevocable sight in one eye | 50% of your AD&D coverage amount |
| More than one of the above in any one accident | 100% of your AD&D coverage amount |
| Your life | 100% of your AD&D coverage amount |

AD&D payments made to you or your beneficiary(ies) follow the same method as your Basic Life payments. The AD&D payment will be in addition to your Basic Life and Supplementary Life (if any) if you should die as a result of an accident.

17

*Accidental Death And Dismemberment Coverage (cont.)*

### When Benefits Are Not Paid

AD&D benefits will not be paid if your loss of life, limb, or sight is caused by:

- physical or mental illness
- infection, except that caused by an external, visible wound caused by an accident
- suicide or attempted suicide
- self-inflicted injury
- war or warlike action in time of peace



### If A Beneficiary Dies Before You

If one of your designated primary beneficiaries dies before you, your AD&D benefit amount will be split into equal shares and paid to your remaining primary beneficiaries. If one of your contingent beneficiaries dies before you, your AD&D benefits will be paid following the same guidelines. If a minor (a person not of legal age) or your estate is the beneficiary, it will be necessary to have a guardian or administrator appointed before any payments are made. If a guardian or administrator is not appointed, there could be court expenses for your beneficiary and a delay in the payment process.

If all your beneficiaries die before you, your AD&D benefits may be paid, in the following order, to your spouse, child(ren), parent(s), or brother(s)/sister(s). If there is no surviving relative as listed, the benefits will be paid to your estate.

### If You Become Disabled

If you become totally disabled and receive benefits from the Sickness and Accident Disability Benefit Plan, your AD&D coverage will continue until your disability benefits end.

## Special Accident Insurance

This insurance offers additional financial protection to your family if you or your spouse die in a job-related accident.



**DEFINITION ▶ JOB-RELATED ACCIDENT**

A job-related accident could occur while you are:

- performing the duties of your employment
- performing the duties at the direction of the proper authority
- voluntarily protecting the Company's property or interest
- traveling at the request and expense of the Company

## What Is The Coverage Amount?

The amount of your Special Accident coverage is based on your annual basic pay.

| If You Are . . . | Your Special Accident Insurance Amount Would Equal . . . |
|---|---|
| **A management or non-management employee** not covered by the Ameritech Pension Plan and your annual rate of pay as determined by the Company is at least $16,667 | 2 times your annual rate of pay with a maximum of $1,500,000. |
| **An employee covered by the Ameritech Pension Plan** and your annual rate of pay is at least $16,667 but less than $50,000 | 3 times your annual rate of pay. *NOTE: The first $50,000 is paid by the Ameritech Pension Plan; the remainder is paid by Special Accident Insurance with a maximum of $1,500,000.* |
| **An employee covered by the Ameritech Pension Plan** and your annual rate of pay is at least $50,000 | 3 times your annual rate of pay with a maximum of $1,500,000. *NOTE: One year's pay is paid by the Ameritech Pension Plan; the remainder is paid by the Special Accident Insurance.* |

If your spouse dies as a result of an accident directly related to your employment with the Company, you or your beneficiary(ies) will be paid $50,000.



*Special Accident Insurance (cont.)*



**EXAMPLE 3**

**Using Special Accident Insurance**

Angela is a full-time non-management employee covered by the Ameritech Pension Plan. Angela's Special Accident Insurance coverage is equal to three times her annual salary ($29,300) less $50,000 (paid by the Ameritech Pension Plan), or $37,900.

$29,300 x 3 = $87,900 - $50,000 = **$37,900**

If Angela dies because of a job-related accident, her surviving spouse, William, would receive

| | |
|---|---|
| from Special Accident Insurance: | $37,900 |
| from the Ameritech Pension Plan: | + $50,000 |
| **Total** | **$87,900** |

**How To Claim Benefits**

To claim your Special Accident benefits, written evidence must be submitted to the insurance carrier proving that your death occurred within one year of the accident and was a direct cause of an on-the-job accident. The Ameritech Health Plans Service Center will assist you in filing any claims.

**How Benefits Are Paid**

Your Special Accident payment amount is in addition to any benefits payable under Basic Life and AD&D Insurance. If your total Special Accident payment amount exceeds $10,000, the life insurance carrier will deposit your benefit payment into a Total Control Money Market account by the life insurance carrier for your beneficiary(ies). If your payment is less than $10,000, your beneficiary(ies) will be paid in a lump sum check.

20

**If You Are In A Job-Related Accident**

If you die as a result of a job-related accident, your surviving spouse would receive your Special Accident benefit payment.  To qualify for benefits, your spouse must be married to you and living with you when you die.



If you do not have a qualifying spouse at your time of death, your Special Accident benefit payment will be paid to your qualified dependents.

 **QUALIFIED DEPENDENTS**

**Your qualified dependents include:**

- unmarried children under age 23
- unmarried children over age 23 if they are physically or mentally incapable of self-support

Children must be supported by you at your time of death.

If you do not have a qualified spouse or child at your time of death, your parents will receive your benefit payment if they live in your household or you provide them a separate household in the vicinity of your home.

If you do not have a qualifying spouse, child, or parent at your time of death, your Special Accident benefit payment will be paid to your estate.

 **DID YOU KNOW . . .**

*. . . that your Special Accident Insurance payment amount is in addition to any benefits your beneficiary(ies) receives from your Basic Life and AD&D Insurance?  This means that if you or your spouse die as a result of a job-related accident, you and your family would receive additional life insurance payments (subject to the benefit maximum).*

21

*Special Accident Insurance (cont.)*

**If Your Spouse Dies**
If your spouse dies in an accident directly resulting from your employment with the Company, you will receive the Special Accident benefit of $50,000.
If you are not alive when your spouse dies, benefits will be paid in the same order described in the previous section.

**If You Go On An Approved Leave Of Absence Or Are Laid Off**
If you go on an approved leave of absence, including military leave, or are laid off, your Special Accident coverage will be discontinued for the period of time you are not working.  When you return to work, your coverage will be reinstated automatically.

**When Benefits Are Not Paid**
Special Accident benefits will not be paid if your death is directly or indirectly caused by the following:

- physical or mental illness
- infection, except that caused by an external visible wound caused by an accident
- war or warlike action in time of peace
- suicide while sane or insane
- full-time active duty in the armed forces of any country
- use of any drug, unless used according to the advice of a medical practitioner
- committing or attempting to commit an assault or felony

Also, the insurance carrier has the right to perform an autopsy at its own expense in cases where the cause of death is questionable.

**When Coverage Ends**
Your coverage under Special Accident Insurance ends when you terminate employment, become totally disabled, or retire.

22

# Your Supplementary Life Insurance And Dependent Life Insurance Benefits

In addition to Basic Life, AD&D, and Special Accident coverage, you can purchase additional coverage through the Supplementary Life Insurance and Dependent Life Insurance benefits. These benefits provide you and your family with additional financial support if you or your dependent dies while covered by the Ameritech Life Insurance Program.

**Who Is Eligible?**
Once you are eligible for Basic Life, you can purchase Supplementary Life or Dependent Life Insurance coverage for a monthly premium.

**How Do I Enroll?**

You can enroll through the Ameritech Health Plans Service Center telephone enrollment system by dialing **800/223-2929** within 31 days of your date of hire or during open enrollment.

If you don't elect coverage within the first 31 days of your date of hire, or if you want to change your coverage amount due to a qualifying event, you will need to provide evidence of insurability in order for your new or increased coverage to take effect.



**DID YOU KNOW . . .**

*. . . that if you don't purchase Supplementary Life or Dependent Life Insurance when you first become eligible, you and your covered dependents must submit evidence of insurability before coverage begins? If you need to provide evidence of insurability, the appropriate forms will be sent to you automatically by the Ameritech Health Plans Service Center.*

## Supplementary Life Insurance

Supplementary Life Insurance provides an additional life insurance payment to your beneficiary(ies) at your time of death.

*Please note: Corporate Resource Managers covered by the Key Management Life Insurance Program are not eligible for Supplementary Life Insurance coverage.*

### When Coverage Begins

If you have enrolled within 31 days of your hire date, you do not have to provide evidence of insurability. Your coverage will take effect on the first day of the month in which you have completed six months of service. If you make changes due to a qualifying event, you must provide proof of insurability. Your coverage will take effect on the first day of the following month in which your coverage has been approved by the life insurance carrier. If you make changes during open enrollment, your coverage will begin on January 1, once proof of insurability is approved by the life insurance carrier.

### What Is The Coverage Amount?

As an active employee, you choose how much, if any, Supplementary Life coverage you purchase. Coverage can range from one to five times your Basic Life coverage amount.

### What Do I Pay?



You must pay a monthly premium to receive Supplementary Life Insurance coverage. When your coverage begins, your contribution is automatically deducted from your paycheck. If you change your coverage level or have recently enrolled you may want to check your pay stub to verify that the correct deduction has been made.

The cost of your monthly premium depends on:

- your age
- your wages or salary
- amount of coverage you elect

Therefore, as your age and salary increase, the cost of your Supplementary Life Insurance will increase. The following charts provide the monthly cost of Supplementary Life coverage for active employees and retirees.

Please note that the premium is different if you retired before January 1, 1987.

## Supplementary Life Insurance Monthly Premium For
## All Active Employees And Retirees After December 31, 1986



| Age | Monthly Premium* |
|---|---|
| Under 30 | $.07 |
| Age 30 to 34 | $.08 |
| Age 35 to 39 | $.11 |
| Age 40 to 44 | $.14 |
| Age 45 to 49 | $.24 |
| Age 50 to 54 | $.39 |
| Age 55 to 59 | $.61 |
| Age 60 to 64 | $.94 |
| Age 65 to 69 | $1.43 |
| Age 70 to 74 | $2.03 |
| Age 75 and over | $3.24 |

## Supplementary Life Insurance Premiums For Retirees Before January 1, 1987

| Age | Monthly Premium* |
|---|---|
| Under 30 | $.20 |
| Age 30 to 34 | $.20 |
| Age 35 to 39 | $.20 |
| Age 40 to 44 | $.20 |
| Age 45 to 49 | $.40 |
| Age 50 to 54 | $.55 |
| Age 55 to 59 | $.70 |
| Age 60 and over | $1.10 |

*1997 and 1998 rates. The premium amounts are for each $1,000 of Supplementary coverage each month.*

*Supplementary Life Insurance (cont.)*



**Purchasing Supplementary Life Insurance**

Samuel, a 40-year-old regular, full-time employee, wants to purchase additional life insurance to provide greater financial resources for his family should he die. Therefore, in addition to his Basic Life coverage ($36,000), Samuel decides to purchase Supplementary Life coverage equal to one times his Basic Life coverage amount ($36,000).

Based on the current rates for a 40-year-old, Samuel's cost for his additional Supplementary Life Insurance coverage would be:

$$\$.14 \times 36 = \$5.04 \text{ each month, } or$$

$$\$60.48 \text{ each year}$$

**How Benefits Are Paid**

Upon your death, your Supplementary Life coverage is paid in the same way as your Basic Life coverage is paid to your beneficiary(ies).

**When Coverage Ends**

Your Supplementary Life coverage will continue until any age, if you continue working and paying your monthly premium. If you work past age 65, your Supplementary Life coverage is not reduced and will be based on your unreduced Basic Life coverage amount.

**If You Are On An Approved Leave Of Absence Or Are Laid Off**

If you are on an approved leave, Supplementary Life coverage will continue for 12 months, provided you continue making your monthly payments. If you are on an approved union leave of absence, your coverage can be continued for a longer period of time if you continue your payments.

If you are laid off, coverage will continue for six months if you continue your payments.

**If You Become Disabled**

Your Supplementary Life coverage will continue following the same guidelines under Basic Life Insurance, provided you continue making your monthly premium payments.

26

**If You Retire**

If you retire with a service or disability pension under the Ameritech Pension Plan (APP) or if you are a management employee and meet the "Rule of 75" requirements (your age plus your years of service is at least 75), Supplementary Life coverage is available to you until the end of the month of your 65th birthday. Your monthly premium payments can either be automatically deducted from your pension check or billed by the Ameritech Health Plans Service Center.

To maintain your coverage level after you retire, you must continue to pay your monthly premium. You can elect to decrease your Supplementary Life coverage amount; however, you cannot increase your coverage after retirement.

If you retired before January 1, 1987, you can maintain your Supplementary Life coverage of one, one and one-half, or two times your Basic Life coverage amount until your 65th birthday by continuing to pay the monthly premium.

If you retired between January 1, 1987 and January 1, 1993, you can maintain your Supplementary Life coverage of one to four times your Basic Life coverage amount until your 65th birthday by continuing to pay the monthly premium.

**If You Are Diagnosed With A Terminal Illness**

If you are diagnosed with a terminal illness and have a life expectancy of six months or less, and are an active employee or retired on or after January 1, 1993, you may choose to receive an accelerated benefit payment from your Supplementary Life Insurance. This Accelerated Benefit Option allows you to access your Supplementary Life benefits to help you meet your expenses prior to your death.



Through this option, you can receive up to 100% of your Supplementary Life Insurance benefit, with a minimum of $5,000. To qualify, you must submit a completed claim form and acceptable proof of the diagnosis, such as a letter from your physician confirming your illness and life expectancy, to the Ameritech Health Plans Service Center.

If you use the Accelerated Benefit Option, you could affect your eligibility for Medicaid and other government benefits. In addition, the Supplementary Life coverage amount that is payable to your beneficiary(ies) upon your death is reduced by the amount paid under the Accelerated Benefit Option. Due to the tax implications of receiving an early benefit payment, you may want to consult a tax advisor to ensure that the amount paid to you before your death is taxed appropriately.

27

*If You Are Diagnosed With A Terminal Illness (cont.)*

If your Supplementary Life Insurance benefits have been assigned to someone else through an absolute assignment, you or your assignee cannot receive benefits under the Accelerated Benefit Option.

## *Dependent Life Insurance*

In the event of a dependent's death, your Dependent Life Insurance coverage will provide you and your family with additional financial resources.



**Who Is Covered?**
You can insure some or all of your dependents through Dependent Life Insurance coverage. Your eligible dependents include:

- your spouse
- your unmarried children up to age 19 or age 23, if they are full-time students
- legally adopted children, stepchildren, or children for whom you are the legal guardian and who live in your household

Coverage will not stop regardless of a child's age as long as the child is:

- unmarried,
- not capable of self-sustaining employment due to physical handicap, mental illness, developmental disability or mental retardation, and
- chiefly dependent upon you for support.

The insurance carrier may at any time request proof that your dependents meet the above criteria. It is important to note that if your dependent does not meet the eligibility requirements for coverage, the life insurance carrier will not pay any benefits in the event of a covered dependent's death. You should also be aware that if the life insurance carrier has paid benefits for this dependent before the ineligibility is identified, you will be required to reimburse the life insurance carrier for all payments.



Dependents who are not eligible for Dependent Life Insurance coverage include:

- anyone who needs to provide evidence of insurability and whose evidence is not satisfactory
- a child who is an employee of the Company
- anyone living outside the United States or Canada, unless the dependent lives with the employee outside the United States or Canada
- anyone who is a member of the military or similar forces of any country
- unborn or stillborn children

**When Coverage Begins**

If you have enrolled in Dependent Life coverage within 31 days of your hire date, your coverage will take effect on the first day of the month in which you complete six months of service, without providing evidence of insurability. Otherwise, enrollment or changes to coverage are effective on the first day of the month following the date the insurance carrier approves the change, or on January 1, if you make changes during an open enrollment period.

**What Do I Pay?**

Your contribution amount depends on the level of coverage you choose and which dependents you elect to cover. You can cover your spouse, your spouse and children, or just your children. If you elect Dependent Life coverage for your children, all of your eligible children will be covered, regardless of the number of children you have.



**DID YOU KNOW . . .**

*. . . that if you enroll in Dependent Life Insurance coverage more than 31 days after your hire date or qualifying event, each dependent must provide evidence of insurability to the insurance carrier? The dependent's coverage will be effective after the insurance carrier approves the evidence of insurability.*

*What Do I Pay? (cont.)*

The premium you pay will depend on the coverage option you elect, not the number of children you cover.  The following charts provide the various options that are available to you for coverage of your spouse and children.

**Coverage For Your Spouse**

| Option | Spouse Coverage | Monthly Premium* |
|---|---|---|
| 0 | No coverage | $0.00 |
| 1 | $10,000 | $2.10 |
| 2 | $20,000 | $4.20 |
| 3 | $30,000** | $6.30 |
| 4 | $40,000 | $8.40 |
| 5 | $50,000** | $10.50 |

**Coverage For Your Child**

| Option | Coverage Per Child | Monthly Premium* |
|---|---|---|
| 0 | No coverage | $0.00 |
| 1 | $5,000 | $.35 |
| 2 | $10,000 | $.70 |

\* *For 1997 and 1998.*
\*\* *If you want to increase your spouse's insurance coverage to $30,000 or more, you must provide evidence of insurability.  If the evidence is not satisfactory and the increase is denied, your spouse's coverage amount will remain at $20,000.*

30



**EXAMPLE 5**

**Purchasing Dependent Life Insurance**

Angela, a regular full-time employee, wants to purchase Dependent Life Insurance for her three children and her husband, William.  Angela's total monthly cost for this additional life insurance would be:

| Dependent Life Insurance For . . . | If Angela Chooses Option . . . | Angela's Dependents' Coverage Amount Would Be . . . | Angela's Monthly Premium Would Be . . . |
|---|---|---|---|
| William | 2 | $20,000 | $4.20 |
| Tina, David and Porter (Angela's children) | | $10,000 | |
| **Angela's Total Monthly Premium Payment** | | | **$4.90** |

**How Benefits Are Paid**

If your covered dependent dies, you will receive a lump sum check for the total amount of your Dependent Life Insurance coverage.  If the benefit amount exceeds $10,000, the insurance carrier will deposit the money into a Total Control Money Market account for you.  If you want to change to another account option, contact the life insurance carrier for more information before payment is made.

*Dependent Life Insurance (cont.)*

**When Coverage Ends**

Coverage will end on the last day of the month in which:

- your employment ends

- you stop paying the required monthly premium

- you retire

- you become totally disabled or enter the armed forces

Coverage will end at the end of the year in which:

- your dependent child no longer qualifies by turning age 19 or, if a full-time student, age 23 (unless the child is unmarried, incapable of self-support, and dependent on you for support, or described in the section titled "Who Is Covered?")

**If You Are On An Approved Leave Of Absence Or Are Laid Off**

If you are on an approved leave of absence, you may continue Dependent Life coverage provided you continue making your monthly payments.

If you are laid off, coverage will continue for three months if you continue making your payments.

32

# If You Want To Assign Your Life Insurance

Through the Ameritech Life Insurance Program, you may assign your Basic Life, Accidental Death and Dismemberment, and Supplementary Life Insurance coverage to someone else if both the Company and the insurance carrier approve.  To make an assignment, contact the Ameritech Health Plans Service Center at **800/223-2929** for the appropriate forms.





**DEFINITION    ASSIGN**

By assigning your coverage(s) to someone else, you are making that person the owner of your insurance policy.  Therefore, the person you assign to your coverage(s) would have all the present and future rights, interest, and ownership of the insurance and would choose the beneficiary(ies) of your benefits.

Due to the various legal and tax implications involved with the assignment of your life insurance coverages, you may want to consult a tax advisor before agreeing to assign your coverages to another person.

33

# Converting Your Coverages To An Individual Policy

You can convert your Basic Life, Supplementary Life, and Dependent Life Insurance to an individual policy, without providing evidence of insurability, if your Company-provided insurance ends because:

- your employment with the Company ended
- you were on an extended disability or layoff period

Conversion rights do not extend to Supplementary Life or Dependent Life coverage that is terminated due to retirement or failure to make required monthly premium payments.

 Accidental Death and Dismemberment and Special Accident Insurance cannot be converted to an individual policy.

**How To Convert Coverage**
You will automatically be notified when you are eligible to convert any of your coverages to individual policies. You will have 31 days following the end of your coverage to convert your coverage to an individual policy. After converting to an individual policy, you can choose any type of insurance program available to you from the insurance carrier.

**If Your Program Coverage Ends**
If your coverage ends because the Ameritech Life Insurance Program is discontinued, you may convert your Basic Life Insurance to an individual policy if you have been employed by the Company for at least five years. The amount of your individual policy is limited to the amount of your Basic Life coverage minus any group life insurance coverage the Company offers to replace the discontinued program.

If your coverage ends for any other reason, the amount of your individual policy will be limited to the amount of your coverage at the time coverage ends.

**Converting Your Dependent Life Insurance**
In addition, your dependent(s) may convert your Dependent Life Insurance to an individual policy if:

- you are no longer employed by the Company
- your insurance runs out due to an extended disability or layoff period
- you die
- your dependent loses dependent status

Introducing the Ameritech Life Insurance Program

# How To File A Claim

Please note:  The following information should be used in addition to the information on how to file a claim in the *Administrative Information Handbook*.

Under the Employee Retirement Income Security Act of 1974 (ERISA) and the Life Insurance Program, you, your beneficiary(ies), or duly authorized persons have the right to file a written claim for benefits under the Program.  The written claim should be sent to:

*Ameritech Health Plans Service Center*
*100 Half Day Road*
*Lincolnshire, IL  60069*

If your claim is denied and you want to appeal the decision, refer to the *Administrative Information Handbook* for the correct procedures.



*Administrative Information (con[illegible])*

*Indiana Bell (Retiree Basic Life Insurance)*
CIGNA
P.O. Box [illegible]
Melville, NY [illegible]

- *Program Identification Number*
  Basic Life Insurance: 5[illegible]
  *(including Basic Life, Retiree, Special Accident and Dependent Life)*
  Supplementary Life Insurance: [illegible]

- *Employer Identification Number*
  [illegible]

- *Agent For Service Of Legal Process*
  *Direct legal actions regarding the insurance contract to the [illegible]*
  *Indiana Bell (Retiree Basic Life Insurance)*
  CIGNA
  P.O. Box [illegible]
  Melville, NY [illegible]

  *Wisconsin Bell (Retiree Basic Life Insurance)*
  John Hancock Mutual Life Insurance Company
  P.O. Box [illegible]
  Milwaukee, WI 5320[illegible]

  *Ohio Bell (Retiree Basic Life Insurance)*
  Prudential Insurance Company of America
  5[illegible] North Livingston Avenue
  P.O. Box 290[illegible]
  Roseland, NJ 0706[illegible]

  *All Others*
  Metropolitan Life Insurance Company
  One Madison Avenue
  New York, NY 1001[illegible]

- *Type Of Program*
  Welfare Plan (death benefits)

- *Payment Of Benefits*
  The insurance carrier will pay the benefits provided through the Ameritech Life Insurance Program.

- *Program Contributions*
  Employee contributions, if applicable, go toward the total premium paid by the Company to the insurance carrier.

- *Program Funding*
  The Company pays the cost for all Program benefits, except Supplementary Life and Dependent Life Insurance, which are paid for by employee contributions.

- *Program Year*
  January 1 - December [illegible]

8/97 Mgt/Non-Mgt

| | |
|---|---|
| ACP | AMC |
| ILB | AIS |
| INB | (Mgt/Non-Union, |
| MIB | Non-Mgt, CWA) |
| OHB | CRD |
| WIB | INT |
| ASI | ADV |
| ADS | R-MGT A/86 |
| AIM | R-NM A/87 |
| ACI | |
| NME | |
| APL | |
| CLO | |
| ORC | |
| IYP | |



**B**

# SBC
# RULES FOR EMPLOYEE
# BENEFICIARY DESIGNATIONS


As In Effect On or After March 18, 1985


Revisions Effective October 1, 1994


**EXHIBIT "B"**

SBC
RULES FOR EMPLOYEE BENEFICIARY DESIGNATIONS

Table of Contents

Section                                                                                    Page

1.0    GENERAL INFORMATION                                                             1
       1.1    Intent                                                                   1
       1.2    Application                                                              1
       1.3    Amendment                                                               2
       1.4    Gender and Number                                                       2
       1.5    Relationship                                                             3
       1.6    Definitions                                                              3
              (a)    "Beneficiary"                                                     3
              (b)    "Beneficiary designation"                                         3
              (c)    "Beneficiary designation form"                                    3
              (d)    "Contingent beneficiary"                                          3
              (e)    "Designated beneficiary"                                          3
              (f)    "Effective date of the Rules"                                     3
              (g)    "Employee"                                                        3
              (h)    "Participating Company"                                           4
              (i)    "Person"                                                          4
              (j)    "Primary beneficiary"                                             4
              (k)    "Proceeds"                                                        4
              (l)    "Program or programs"                                             4
              (m)    "Program administrator"                                           4
              (n)    "Spouse"                                                          4

2.0    BENEFICIARY DESIGNATION PROCEDURES                                             5
       2.1    Beneficiary Designation Form                                             5
       2.2    Estate Designation                                                       6
       2.3    Absence of Designation                                                   6
       2.4    Multiple Beneficiaries                                                   6
       2.5    Trust as Beneficiary                                                     6
       2.6    Management of Proceeds by a Conservator, Guardian, Personal
              Representative or Custodian                                              7
       2.7    "My Future Children" As Beneficiary                                      8

| | | | |
|---|---|---|---|
| 3.0 | | ADMINISTRATIVE RULES AND SPECIAL SITUATIONS | 8 |
| | 3.1 | Purpose | 8 |
| | 3.2 | Program Participation | 8 |
| | 3.3 | Revocation or Change of Beneficiary Designation | 8 |
| | 3.4 | Survival Requirement | 9 |
| | 3.5 | Disclaimer or Waiver of Rights to Proceeds | 9 |
| | 3.6 | Distribution Following Marriage Dissolution or Annulment | 10 |
| | 3.7 | Unintentional Disinheritance | 10 |
| | 3.8 | Beneficiary Disqualification by Reason of Fraud, Duress or Undue Influence | 10 |
| | 3.9 | Beneficiary Who Causes the Death of the Employee | 11 |
| 4.0 | | DISTRIBUTION PURSUANT TO BENEFICIARY DESIGNATION | 11 |
| | 4.1 | Purpose | 11 |
| | 4.2 | Single Primary Beneficiary | 11 |
| | 4.3 | Multiple Primary Beneficiaries | 11 |
| | 4.4 | Contingent Beneficiaries | 12 |
| | 4.5 | Distribution to a Trust | 12 |
| | 4.6 | Distribution to a Conservator, Guardian, Personal Representative or Custodian in the Event of an Unnecessary or Terminated or Nonexistent Custodianship or Custodian | 13 |
| | 4.7 | Distribution to "My Future Children" | 14 |
| | 4.8 | Distribution When No Surviving Primary or Contingent Beneficiaries Exist | 14 |
| | 4.9 | Inability to Locate Beneficiary | 15 |
| | 4.10 | Written Request for Execution of Beneficiary Designation | 16 |
| | 4.11 | Distribution of Fractional Shares of Stock | 17 |
| | 4.12 | Distribution in Installments | 17 |
| 5.0 | | PROTECTIONS FOR DISTRIBUTION ON DEATH | 17 |
| | 5.1 | General | 17 |
| | 5.2 | Death Certificate or Other Proof of Death and Request for Execution of Beneficiary Designation | 17 |
| | 5.3 | Limitation of Investigatory Responsibilities | 18 |
| | 5.4 | Limitation of Distribution Responsibilities | 18 |
| | 5.5 | Limitation of Responsibilities to Trustees and Custodians | 19 |
| | 5.6 | Adjudication or Indemnity Bond Requirement | 20 |
| | 5.7 | Protection Against Claims | 20 |

6.0   MAJOR CHANGES EFFECTIVE WITH October 1, 1994 REVISIONS                21

    6.1   General                                                              21

    6.2   Lineal Descendants per Stirpes                                       21

    6.3   Revocation or Change of a Beneficiary Designation by Attorney
         in Fact                                                          21

    6.4   Survival Requirement                                                 21

    6.5   Distribution to After-Born or After-Adopted Child                    22

    6.6   Multiple Primary Beneficiaries                                       22

    6.7   Multiple Contingent Beneficiaries                                    22

    6.8   Distribution When No Surviving Primary or Contingent
         Beneficiary Exists                                               22

    6.9   Distributions in Installment                                         23

SBC
RULES FOR EMPLOYEE BENEFICIARY DESIGNATIONS

1.0    GENERAL INFORMATION.0                                    GENERAL
INFORMATION

1.1    Intent.1          Intent

The SBC Rules for Employee Beneficiary Designations (hereinafter referred to as the
"Rules") have been established for employees to follow in making beneficiary
designations.  The Rules also provide for a method of distribution of proceeds from an
employee's compensation and benefit programs in the event of the death of the employee.

1.2    Application.2  Application

(a)    The Rules govern the making and acceptance of the employee's beneficiary
designation form and the distribution of proceeds under the employee's
compensation and benefit programs upon the employee's death as to those
programs and Participating Companies which have adopted the Rules.  The Rules
have been written by taking into account the Nonprobate Transfers Law of
Missouri, as well as the special interests of employees and their Participating
Companies and the terms of the programs which apply the Rules.  The contractual
obligations of the parties and the interests of the employee's beneficiaries
incorporated in the Rules shall be governed by and construed in accordance with
the applicable provisions of the Internal Revenue Code as amended from time to
time (hereinafter "the Code"), in accordance with the Employee Retirement
Income Security Act of 1974 as amended from time to time (hereinafter
"ERISA"), in accordance with the terms of the programs involved, and, to the
extent not preempted by the foregoing or superseded by the specific applicable
provision of the Rules, consistent with the Nonprobate Transfers Law of Missouri
to the extent that law serves as a guideline for interpretation of the Rules.
Because the Rules provide for a complex distribution process, certain protections
are granted to the parties responsible for making distributions under the Rules.
However, the protections are not intended to govern disputes among an
employee's beneficiaries concerning the employee's proceeds, nor do they have
any other bearing on the rights of beneficiaries in such disputes.

1

(b)     Notwithstanding the Rules, to the extent any term, condition or application of the Rules conflicts with any applicable provision of the Code, ERISA or one or more programs involved, such provision shall supersede such term, condition or application of the Rules.

(c)     All references to the Rules throughout this document shall mean the version of the Rules in effect on or after October 1, 1994, unless the context indicates otherwise.

(d)     The Rules shall govern all beneficiary designations filed and all distributions of proceeds made on or after the effective date of the Rules.  The Rules shall also govern all beneficiary designation forms filed and all distributions of proceeds based on beneficiary designation forms with a 1/94 revision date.

(e)     Effective October 1, 1994, all beneficiary designations filed under the Rules in effect prior to October 1, 1994,  shall be considered null and void regardless of when executed, except those beneficiary designation forms with a 1/94 revision date.

1.3     Amendment

The Rules may be amended from time to time by the Chairman of the Board of SBC (SBC) or, at any time when there is no Chairman of the Board of SBC, by the President of SBC, but not less than sixty days notice must be given to all employees in writing before any such amendment becomes effective.  The notice shall give the date the amended Rules become effective and how an employee may obtain a complete copy of the amended Rules.

The sixty day notice requirement set forth in the preceding paragraph is waived with regard to any employee who submits a beneficiary designation on a beneficiary designation form subject to the Rules in effect on or after October 1, 1994, that becomes effective in accordance with Paragraph 2.1(d) below prior to October 1, 1994.

1.4     Gender and Number.4 Gender and Number

Unless the context of any provision in the Rules indicates otherwise, the masculine includes the feminine, the singular includes the plural, and the plural includes the singular.

2

1.5     Relationship.5 Relationship

As used herein, the terms "child," "children," "parent," or "sibling" refer to individuals     who are related by birth or by adoption and not through     marriage to an employee or to such other individual as indicated by the     context of the provision involved.

1.6     Definitions.6  Definitions

The following words and phrases shall have the respective meanings herein provided unless different meanings are plainly indicated by the context:

(a)     "Beneficiary"(a)     "Beneficiary"  refers   to   an   employee's   designated beneficiary;

(b)     "Beneficiary designation"(b)     "Beneficiary designation" refers to a writing prepared by an employee, in which the employee has designated one or more beneficiaries to receive the employee's proceeds payable upon the employee's death, such writing to be prepared on a beneficiary designation form or on such other form approved by the program administrators;

(c)     "Beneficiary designation form" refers to a form developed for use in designating beneficiaries under the Rules, in accordance with Subsection 2.1 below;

(d)     "Contingent beneficiary"(c)     "Contingent beneficiary" refers to the person or persons designated by an employee to receive the employee's proceeds in the event the primary beneficiary predeceases the employee;

(e)     "Designated beneficiary"(d)     "Designated beneficiary" refers to an employee's primary and/or contingent beneficiary;

(f)     "Effective date of the Rules" means the earlier of October 1, 1994, or the date an employee's beneficiary designation made on a beneficiary designation form subject to the Rules in effect on or after October 1, 1994,  becomes effective in accordance with Paragraph 2.1(d) below;

(g)     "Employee"(e)"Employee" refers to an active, retired or other former employee of a Participating Company or other person who is a participant in a program in which such participant may designate one or more beneficiaries to receive the proceeds payable under that program upon an active, retired or other former employee's death;

3

(h)     "Participating Company"(f)                                "Participating Company" means SBC or a subsidiary of SBC which has adopted and agreed to participate in one or more programs subject to the Rules;

(i)     "Person"(g)   "Person" includes living individuals, legal entities capable of owning property, and fiduciaries;

(j)     "Primary beneficiary"(h)                                "Primary beneficiary" refers to the person or persons designated by an employee to receive the proceeds payable in the event of the employee's death;

(k)     "Proceeds"(i) "Proceeds" means all money, securities, and other property distributable at the death of an employee, including any interest and dividends earned thereon, under the terms of one or more programs, less all charges and amounts owing under the program(s), including tax withholding and any offsets for any amounts owed the Participating Company by the employee;

(l)     "Program" or "programs"(j)                                "Program or programs" include all compensation, deferred compensation, life insurance, savings, pension, stock purchase and ownership, retirement, severance and death benefit plans, accounts and programs, in which an employee was participating at the time of the employee's death and under which the employee was offered the opportunity to designate beneficiaries to receive the proceeds distributable from such programs upon the occurrence of the employee's death pursuant to the Rules; as used herein, "compensation" shall include final unpaid wages, reimbursable expenses, bonuses, cash incentive awards, TEAM awards, vacation pay, disability benefits, pension benefits, severance pay and similar forms of compensation owed to the employee at the time of his death;

(m)     "Program administrator"(k)                                "Program administrator" means those persons, committees, trustees, insurance carriers, and Participating Companies who are responsible under a program to distribute the proceeds of the program upon the employee's death; and

(n)     "Spouse"(l)   "Spouse" means the person to whom an employee is legally married, including marriage in common law.

## 2.0   BENEFICIARY DESIGNATION PROCEDURES.0
## BENEFICIARY DESIGNATION PROCEDURES

2.1   Beneficiary Designation Form.1                                          Beneficiary
Designation Form

(a)   An employee may designate one or more primary beneficiaries and one or more contingent beneficiaries to receive all or part of the employee's proceeds in the event of the death of the employee.

(b)   An employee's beneficiary designation shall be made on a beneficiary designation form provided by the program administrators. A beneficiary designation shall be made by submitting a completed beneficiary designation form to the program administrators in accordance with the Rules.

(c)   An employee making a beneficiary designation must sign and date the beneficiary designation form, and have his or her signature witnessed by an adult person other than a designated beneficiary.

(d)   An employee's beneficiary designation shall be effective at the time the beneficiary designation form is received by the program administrators, provided the form is subsequently accepted by the program administrators. Acceptance of an employee's beneficiary designation occurs when the employee's beneficiary designation form has been received, determined to be complete by the program administrators, and stamped "accepted", provided the employee is alive as of the time and date of receipt of the beneficiary designation.

The SBC Executive Compensation Organization shall accept and maintain original beneficiary designations for all the programs they administer.

After acceptance by the program administrators, beneficiary designation forms for all other programs shall be computer-imaged and the imaged copies stored. The original form shall then be returned to the employee. In the event any discrepancy between an original form and the imaged form occurs, the imaged form shall prevail. Notice of the program administrator's receipt and acceptance or non-acceptance of the employee's beneficiary designation form shall be given to the employee in a timely manner.

An employee may submit in writing a beneficiary designation with provisions different from those provided under a beneficiary designation form provided by the program administrators or different from those provided under the Rules, subject to approval by the program administrators.

    (e)    A beneficiary designation form shall also be used for making changes in beneficiary designations in accordance with Subsection 3.3 below.

**2.2**    Estate Designation.2  Estate Designation

An employee may designate his estate as primary or contingent beneficiary to receive all or part of the proceeds distributable from a program.

**2.3**    Absence of Designation.3    Absence of Designation

If there is no beneficiary designation that applies to a program, the program proceeds shall be distributed in accordance with the order of distribution set forth in the applicable program or, if none, in Subsection 4.8 below.

**2.4**    Multiple Beneficiaries.5     Multiple Beneficiaries

Multiple primary and/or multiple contingent beneficiaries may be designated on the beneficiary designation form. If more than one primary beneficiary is designated and the distribution is to be made in unequal shares, the percentages allocated to each primary beneficiary must be specific and must add up to 100%. If more than one contingent beneficiary is designated and the distribution is to be made in unequal shares, the percentages allocated to each contingent beneficiary must be specific and must add up to 100%. If the distribution to multiple primary and/or multiple contingent beneficiaries is to be made in equal shares, no percentages are necessary.

**2.5**    Trust as Beneficiary.6 Trust as Beneficiary

An employee may designate a trust as a primary or contingent beneficiary. If an employee elects to have all or part of the proceeds paid to a trust, the beneficiary designation form shall indicate the following:

    (a)    either

        (1)    the name of the trustee of the designated trust, the title and date of the trust instrument, and the name of the person executing the trust instrument, or

        (2)    the phrase "Trustee Under My Last Will As Admitted To Probate", and

    (b)    the share payable to the trust.

**2.6**    Management of Proceeds by a Conservator, Guardian, Personal Representative or Custodian.7 Management of Proceeds by a Conservatorship or Custodianship

(a)    An employee may direct that the employee's proceeds that are otherwise distributable to a primary or contingent beneficiary who is a minor or legally disabled adult on the date of distribution be distributed to a court supervised conservator, guardian or personal representative on behalf of that minor or disabled adult in accordance with the applicable law of the state in which the minor or disabled adult resides at the time of distribution, unless a program administrator determines, in the administrator's sole discretion, that it is more appropriate to apply the law of another state under the circumstances.

(b)    An employee may designate a custodian and/or grant to another person the power to designate a custodian (hereinafter "a nominee") under state law that provides for custodianship of property for minors or legally disabled adults. The custodian shall hold the employee's proceeds that are otherwise distributable to a primary or contingent beneficiary who is a minor or legally disabled adult on the date of distribution, subject to that law. If the employee designates an initial custodian for a designated beneficiary, a nominee's power shall be limited to designating a substitute or successor custodian in the event the initial custodian declines to serve as custodian, is not qualified or not capable of serving as custodian, is incapacitated or deceased, or for any of the foregoing reasons does not continue to serve as custodian.

    (1)    A custodianship shall be established under and subject to the applicable law of the state in which the minor or legally disabled adult resides at the time of distribution, unless a program administrator determines, in the administrator's sole discretion, that it is more appropriate to apply the law of another state under the circumstances. If no such applicable law exists, the proceeds shall be distributed to the designated custodian as trustee to hold in trust for the beneficiary, and the terms of the trust shall be for minors, the Missouri Transfers to Minors Law, and for legally disabled adults, the Missouri Personal Custodian Law.

    (2)    The beneficiary designation form shall indicate the following:

        (i)    name of the initial custodian,
        (ii)    address of the custodian,
        (iii)    the name of each beneficiary for whom a custodian is designated, and
        (iv)    the name and address of any nominee granted a power to designate a custodian or successor custodian.

2.7    "My Future Children" As Beneficiary.8                   "My Children" As Beneficiary

7

An employee may designate "my future children" as a primary or contingent beneficiary(ies) in a beneficiary designation in order to designate as a child or children not born or adopted at the time the beneficiary becomes effective in accordance with Paragraph 2.1(d) above.

     beneficiary   a
     designation

## 3.0    ADMINISTRATIVE RULES AND SPECIAL SITUATIONS .0       INCIDENTS OF BENEFICIARY DESIGNATION

### 3.1    Purpose.1    Purpose

The purpose of a beneficiary designation is to distribute to an employee's beneficiaries the proceeds, if any, of the programs in which the employee is participating at the time of the employee's death.

### 3.2    Program Participation.2    Program Participation

A beneficiary designation for a program in which the employee is not participating or participation is suspended or ceases shall apply for that program when the employee begins or resumes participation, unless the employee submits a new beneficiary designation for that program.

### 3.3    Revocation or Change of Beneficiary Designation.3       Revocation or Change of Beneficiary Designation

    (a)    A beneficiary designation may be revoked or changed at any time and in any manner permitted by the Rules by using a beneficiary designation form. Notwithstanding any contract, agreement, assignment or promise (whether oral or written) to the contrary, unless otherwise provided under the programs involved, a beneficiary designation form shall revoke and supersede all previous designations for the program or programs specified in the new beneficiary designation as of the time such beneficiary designation becomes effective.

    (b)    A beneficiary designation may be revoked or changed, in whole or in part, at any time prior to the death of the employee.

    (c)    A beneficiary designation may be revoked or changed only as provided in Paragraph 3.3(d) below.

    (d)    An outstanding beneficiary designation is revoked when a subsequently executed beneficiary designation is received by the program administrators prior to the employee's death, provided the form is subsequently accepted by the program administrators in accordance with Paragraph 2.1(d) above.

8

(e)     An attorney in fact may revoke or change an employee's beneficiary designation only if acting pursuant to a durable power of attorney that provides authorization for making a revocation or change in the employee's beneficiary designation.

(f)     A beneficiary designation may not be revoked or changed by a provision in an employee's will.

3.4     Survival Requirement.4        Survival Requirement

(a)     A beneficiary shall not be entitled to receive any part of the employee's proceeds unless that beneficiary survives the employee.  The share of any beneficiary who does not survive the employee shall be distributed in accordance with Subsections 4.2, 4.3, 4.4, 4.5, 4.6, 4.7 and 4.8 below, as applicable.

(b)     As used in the Rules, the word "survive" or its derivatives shall mean surviving the employee for a period of at least 120 hours.  In the case of a legal entity who is a designated beneficiary, the word "survive" or its derivatives shall mean being in existence or in effect on or as of the date of the employee's death.

(c)     If the time of death of an employee or beneficiary cannot be determined, or if it cannot be established that a beneficiary survived the employee by 120 hours, it shall be deemed that the beneficiary failed to survive the employee and the proceeds shall be distributed as if the beneficiary had predeceased the employee.

3.5     Disclaimer or Waiver of Rights to Proceeds.7                    Disclaimer  or Waiver of Rights to Proceeds

If a surviving beneficiary disclaims or waives, in whole or in part, that beneficiary's share or right to a share in the distribution of the employee's proceeds, then the portion disclaimed or waived shall be distributed as if that beneficiary had predeceased the employee.

3.6     Distribution Following Marriage Dissolution or Annulment.8           Distribution Following Marriage Dissolution

(a)     If after the employee makes a beneficiary designation in favor of a person who is the employee's spouse, the employee's marriage with that person is dissolved or annulled and the employee and that person are not married to each other at the time of the employee's death, then the beneficiary designation in favor of that person is revoked as of the date the marriage is dissolved or annulled and that person's share or right to share in the distribution of the employee's proceeds shall be distributed in accordance with the terms of the program or with  Subsections 4.2, 4.3, 4.4, 4.5, 4.6, 4.7 and 4.8 below, as applicable.

9

b)    Paragraph 3.6(a) above shall not apply to a beneficiary designation in favor of a designated beneficiary who is the employee's former spouse, if the beneficiary designation is made after the employee marriage with that designated beneficiary is dissolved or annulled, subject to the employee's right to revoke or change his beneficiary designation in accordance with Subsection 3.3 above.

3.7    Unintentional Disinheritance.9                    Unintentional Disinheritance

An employee's surviving spouse and/or child, claiming under the laws protecting such person from unintentional disinheritance by the will of a testator or testatrix, shall have no interest in the distribution of the employee's proceeds pursuant to the employee's beneficiary designation.

3.8    Beneficiary Disqualification by Reason of Fraud, Duress or Undue Influence.10
        Beneficiary Disqualification by Reason of Fraud, Duress or Undue Influence

If a person who is named or becomes a beneficiary under an employee's beneficiary designation under circumstances which indicate or suggest that such beneficiary designation was obtained by reason of fraud, duress or undue influence, each program administrator shall determine, in his sole discretion, whether under all the facts and circumstances it is more likely than not that a civil jury would disqualify such beneficiary from receiving any part of the employee's proceeds from the program involved.  If a program administrator makes such a determination, then such beneficiary's share shall be deposited with a court of competent jurisdiction in accordance with Subsection 5.6 below, in which event the Participating Company and the program administrator for the program involved shall have no further liability to anyone with respect to such amount. In the absence of such a determination, the employee's proceeds shall be distributed pursuant to the terms of the employee's beneficiary designation.

10

3.9   Beneficiary Who Causes the Death of the Employee.11                Beneficiary
Who Causes the Death of the Employee

If a person who is named or becomes a beneficiary under an employee's beneficiary designation causes or participates in causing the death of the employee, each program administrator shall determine, in his sole discretion, whether under all the facts and circumstances it is more likely than not that a civil jury would disqualify such beneficiary from receiving any part of the employee's proceeds from the program involved. If a program administrator makes such a determination, then such beneficiary's share shall be deposited with a court of competent jurisdiction in accordance with Subsection 5.6 below, in which event the Participating Company and the program administrator for the program involved shall have no further liability to anyone with respect to such amount. In the absence of such a determination, the employee's proceeds shall be distributed pursuant to the terms of the employee's beneficiary designation.

## 4.0   DISTRIBUTION PURSUANT TO BENEFICIARY DESIGNATION.0 DISTRIBUTION PURSUANT TO BENEFICIARY DESIGNATION

4.1   Purpose.1      Purpose

(a)      Upon proof of the employee's death, the program administrators shall distribute the employee's proceeds to the beneficiaries who survive the death of the employee.

(b)      Proof of death shall also be furnished for any beneficiary who is deceased and who would have received a portion of the proceeds under the employee's beneficiary designation.

4.2   Single Primary Beneficiary.2 Single Primary Beneficiary

If a single primary beneficiary has been designated and survives the employee, the distribution shall be made to the primary beneficiary.

4.3   Multiple Primary Beneficiaries.3                          Multiple
Primary Beneficiaries

If multiple primary beneficiaries have been designated, the distribution shall be made to the surviving primary beneficiaries in the percentage stated in the beneficiary designation for each primary beneficiary. If equal shares of the employee's proceeds are indicated in the beneficiary designation or no percentage is stated in the beneficiary designation, then the surviving primary beneficiaries shall share equally. If either equal or unequal shares of the employee's proceeds are indicated in the beneficiary designation and one or more

11

primary beneficiaries do not survive the employee's death, the surviving primary beneficiaries shall share equally in the share of each non-surviving primary beneficiary.

4.4     Contingent Beneficiaries.4     Contingent Beneficiaries

If an employee has no primary beneficiaries who survive the employee and if an employee's beneficiary designation includes one or more contingent beneficiaries, the distribution shall be made to the surviving contingent beneficiaries in the percentage stated in the beneficiary designation for each contingent beneficiary. If equal shares are indicated in the beneficiary designation or no percentage of the employee's proceeds is stated in the beneficiary designation, then the surviving contingent beneficiaries shall share equally. If one or more contingent beneficiaries do not survive the employee's death, the surviving contingent beneficiaries shall share equally in the share of each non-surviving contingent beneficiary.

4.5     Distribution to a Trust.6     Distribution to a Trust

(a)     If an employee designated a trust as the employee's beneficiary in accordance with Subsection 2.5 above, the employee's proceeds shall be distributed to that trust pursuant to the terms of the employee's beneficiary designation and that trust, provided the trust is in existence as of the time of the employee's death and the trustee (or the trustee's successor) is available and capable of executing the trust.

(b)     (1)     If either

(i)     a trust which has been designated as a beneficiary by an employee in accordance with Subsection 2.5 above is terminated prior to the employee's death or does not come into existence on or before the employee's death, or

(ii)     a trustee under a trust designated as a beneficiary by an employee in accordance with Subsection 2.5 above does not survive the employee, resigns, or is unable or unwilling to execute the trust as trustee, and

(2)     if within six months of the employee's death no successor trustee has been appointed or has undertaken to act under the trust, and

(3)     no trust instrument or probated will creating an express trust has been presented to the program administrators, then the program administrators may, in their discretion, distribute the employee's proceeds in the same manner as they would be distributed if the trust was not in existence.

12

4.6     Distribution to a Conservator, Guardian, Personal Representative or Custodian or in the Event of an Unnecessary or Terminated or Nonexistent Custodianship or Custodian.5
        Distribution to a Conservatorship or Custodianship or in the Event of an Unnecessary or Terminated or Nonexistent Custodianship or Custodian

(a)     If an employee directs that the employee's proceeds shall be distributed to a court supervised conservator, guardian or personal representative on behalf of a beneficiary in accordance with Paragraph 2.6(a) above, the employee proceeds shall be distributed in this manner pursuant to the terms of the employee's beneficiary designation and Paragraph 2.6(a), provided the conservatorship, guardianship or personal representation is necessary (due to the continuing minority or legal disability of the employee's beneficiary) at the time of the employee's death.

(b)     If an employee designates a custodian for a beneficiary in accordance with Paragraph 2.6(b) above, the employee's proceeds shall be distributed to that custodian pursuant to the terms of the employee's beneficiary designation and Paragraph 2.6(b), provided the custodianship is necessary (due to the continuing minority or legal disability of the employee's beneficiary) at the time of the employee's death and the custodian (or the custodian's successor) is available and capable of serving as custodian.

(c)     If a beneficiary for whom an employee has provided for distribution to a custodianship in accordance with Paragraph 2.6(b) above is of legal age or is not under any legal disability, the employee's proceeds shall be distributed directly to the beneficiary.

(d)     If a beneficiary for whom an employee has provided for distribution to a custodianship in accordance with Paragraph 2.6(b) above does not survive the employee, the employee's custodian designation is revoked.

(e)     (1)     If a person designated as custodian for a beneficiary by an employee under a custodianship in accordance with Paragraph 2.6(b) above either (i) declines to serve as custodian, or (ii) is not qualified or not capable of serving as custodian, or (iii) is incapacitated or deceased, and

        (2)     if within six months of the employee's death no successor custodian has been appointed or has undertaken to act under the custodianship, then the employee's proceeds shall be distributed to a conservator for the beneficiary or as directed by a court with jurisdiction over the estate of the minor or legally disabled adult beneficiary.

4.7     Distribution to "My Future Children"

13

If an employee designates "my future children" as a primary or contingent beneficiary in accordance with Subsection 2.7 above, the employee's surviving child or children born or adopted after the beneficiary designation becomes effective shall share equally with other primary or contingent beneficiaries, as the case may be, in the percentage of the employee's proceeds indicated for "my future children" on the beneficiary designation form. If no percentage is noted on the form, the employee's designated beneficiaries and surviving children born or adopted after the beneficiary designation becomes effective shall share equally in the employee's proceeds with the other primary or contingent beneficiaries, as the case may be.

If an employee designates "my future children" in a beneficiary designation that becomes effective before the employee's death and no surviving children are born or adopted after the designation becomes effective, the employee's designated primary or contingent beneficiaries, as the case may be, shall share equally in the percentage of the proceeds designated for "my future children".

4.8     Distribution When No Surviving Primary or Contingent Beneficiaries Exist.5
          Distribution When No Surviving Primary or Contingent Beneficiaries Exist

    (a)     If with regard to a particular program, no beneficiary designation form is received by the program administrator and subsequently accepted in accordance with paragraph 2.1(d) prior to an employee's death or the employee otherwise has no primary or contingent beneficiary who survives the employee's death, the proceeds shall be distributed to the following persons under the circumstances and in the order stated, as applicable:

        (1)     if the employee is survived by a spouse, then all proceeds from each such program shall be distributed to the employee's surviving spouse;

        (2)     if the employee is not survived by a spouse, then all proceeds from each such program shall be distributed to the employee's surviving child or children, if any, in equal shares;

        (3)     if the employee is not survived by either a spouse or a child, then all proceeds from each such program shall be distributed to the employee's surviving parent(s), if any, in equal shares;

        (4)     if the employee is not survived by either a spouse, a child, or a parent, then all proceeds from each such program shall be distributed to the employee's surviving sibling(s) (including half blood), if any, in equal shares;

        (5)     if none of the persons listed in Subparagraphs 4.8(a)(1)-(4) above survives the employee, then all proceeds from each such program shall be

14

distributed to the employee's estate in accordance with the applicable laws of the state in which the employee resided immediately prior to his death that govern succession to property owned by the employee at death, unless the program administrator determines, in the administrator's sole discretion, that it is more appropriate to apply similar law of another state under the circumstances.

4.9    Inability to Locate Beneficiary.6                                  Inability    to
Locate Beneficiary

   (a)    If an employee's beneficiary cannot be located at the time the employee's proceeds are distributed to the employee's located beneficiaries and there is no proof of the missing beneficiary's death, the program administrators shall hold the missing beneficiary's share of the employee's proceeds as follows:

      (1)    money to be paid shall be held in an interest-bearing account;

      (2)    stock shall be held in a dividend reinvestment account.

   (b)    If the missing beneficiary's share is not claimed by the missing beneficiary within one year of the employee's death, the program administrators shall distribute the missing beneficiary's share in accordance with the terms of the employee's beneficiary designation and the Rules as if the missing beneficiary had not survived the employee.

   (c)    The program administrators are not under any obligation to do any of the following:

      (1)    attempt to locate a missing beneficiary;

      (2)    invest the share other than as provided in this subsection; or

      (3)    hold the share longer than as provided in this subsection.

4.10    Written Request for Execution of Beneficiary Designation.7                    Written
Request for Execution of Beneficiary Designation

   (a)    A written request for execution of a beneficiary designation may be made by any beneficiary or the employee's executor, administrator or other personal representative.  The written request shall include the following:

      (1)    proof of death of the employee;

      (2)    proof of death of any non-surviving beneficiary, if applicable;

15

(3)    full name, address, date of birth and social security number of each person who is to receive a distribution under the beneficiary designation;

(4)    an inheritance tax waiver from the states that require it;

(5)    a statement that (i) there are no known disputes as to the persons entitled to a distribution, (ii) there are no known disputes as to the amount to be distributed to each person, and (iii) there are no known claims that would affect the distribution requested; and

(6)    such other information and proof of entitlement as the program administrators may require.

(b)    The program administrators may require that all beneficiaries agree to the distribution requested.  A request for execution by an employee's executor, administrator or other personal representative shall be accompanied by a certified and/or authenticated copy of the letters testamentary or administration, certifying to the qualification of the executor, administrator or other personal representative.

(c)    A distribution of the employee's proceeds to one or more beneficiaries pursuant to the employee's beneficiary designation is conditioned on the agreement of each beneficiary that if it is determined at any time that all or any part of the distribution received by each beneficiary belongs to another person or persons, each beneficiary shall deliver the portion improperly received or its value, and any income earned, to the rightful person or persons.

4.11    Distribution of Fractional Shares of Stock.8            Distribution of Fractional Shares of Stock

If the number of shares of stock to be distributed to any beneficiary results in the allocation of fractional shares of stock, the cash equivalent of such fractional shares shall be distributed.

4.12    Distribution in Installments.9 Distribution in Installments

Except as otherwise provided in the applicable program, distribution of the employee's proceeds in installments to a beneficiary is conditioned on the continued survival of the installment beneficiary for the period over which the installments are to be paid.

If an installment beneficiary dies before all installments are distributed, the remaining proceeds shall be distributed in equal shares to the employee's beneficiaries who survive the installment beneficiary as if the employee had died immediately after the installment beneficiary.

16

This Subsection 4.12 shall not apply to the distribution of proceeds to a trust.

5.0     PROTECTIONS FOR DISTRIBUTION ON DEATH.0
        PROTECTIONS FOR DISTRIBUTION ON DEATH

5.1     General.1        General

The program administrators and all Participating Companies shall have the protections provided in this Section 5 and in the Rules generally for executing an employee's beneficiary designation and distributing the employee's proceeds upon the employee's death to the employee's beneficiaries in accordance with the Rules.

The decision of any program administrator under the Rules shall not be      binding   upon any other program administrator or program.

5.2     Death Certificate or Other Proof of Death and Request for Execution of Beneficiary Designation.2 Death Certificate or Other Proof of Death and Request for Execution of Beneficiary Designation

Program administrators may rely and act on the following:

(a)     a certified copy of a death certificate issued by an official or agency of the place where the death occurred as showing the fact, place, date, time of death and the identity of the decedent;

(b)     a certified copy of any report or record of a governmental agency, domestic or foreign, as showing that a person is missing, detained, dead or alive and the dates, circumstances and places disclosed by the report or record;

(c)     any information contained in a request submitted under Subsection 4.10 above for the execution of an employee's beneficiary designation.

5.3     Limitation of Investigatory Responsibilities.3                              Limitation   of Investigatory Responsibilities

The program administrators shall not have any duty or obligation to do any of the following:

(a)     to verify information in a request for execution of an employee's beneficiary designation submitted in accordance with Subsection 4.10 above;

17

(b)     to give notice to any person of the date, manner and persons to whom distribution will be made under an employee's beneficiary designation, except as provided in Subsection 5.4 below;

(c)     to attempt to locate any beneficiary;

(d)     to locate a trustee or custodian or obtain appointment of a successor trustee or custodian, or discover the existence of a trust instrument or will that creates an express trust; or

(e)     to determine any fact or law that would cause an employee's beneficiary designation to be revoked, in whole or in part, because of a change in marital status or other reason, or that would qualify or disqualify any person from entitlement to receive a share of the employee's proceeds under the employee's beneficiary designation, or that would vary the distribution provided in the employee's beneficiary designation.

5.4     Limitation of Distribution Responsibilities.4                    Limitation   of
Distribution Responsibilities

(a)     The program administrators shall have no duty or obligation to withhold making a distribution of the employee's proceeds based on knowledge of any fact or claim adverse to the distribution to be made, unless the program administrators have received written notice at a place and time and in a manner which affords a reasonable opportunity to act on such notice before the distribution is made, and provided such notice does the following:

(1)     asserts a claim of beneficial interest in the distribution adverse to the distribution to be made;

(2)     gives the name of the claimant and address for communications directed to the claimant;

(3)     identifies the deceased employee and the program or programs to which the claim applies; and

(4)     states the amount and nature of the claim as it affects the distribution.

(b)     If a notice as described in Paragraph 5.4(a) above is received, the program administrators may discharge any duty or obligation to the employee's beneficiaries, to the employee's estate and other persons listed in the program or in Subsection 4.8 above, as applicable, and to the claimant, by sending a notice by registered or certified mail to the claimant and the persons named in a request for execution of beneficiary designation under Subsection 4.10 above, at the

18

addresses given in the notice of claim and request for execution of beneficiary designation, containing the following:

    (1)    the amount to be distributed;

    (2)    the person to whom the distribution will be made;

    (3)    the respective share of the persons to whom the distribution will be made; and

    (4)    a statement that the distribution will be made in thirty days from the date of mailing unless the distribution is restrained by a court order.

5.5    Limitation of Responsibilities to Trustees and Custodians.5        Limitation of Responsibilities to Trustees and Custodians

The program administrators shall have no responsibility for the application or use of the employee's proceeds distributed to a trustee or a custodian under the employee's beneficiary designation; and the receipt by the trustee or custodian of such proceeds shall fully discharge the program administrators from all liability for the distribution to the employee's beneficiaries, to the employee's estate and other persons listed in the program or in Subsection 4.8 above, as applicable, and to any and all other persons claiming interests in the distribution.

5.6    Adjudication or Indemnity Bond Requirement.6        Adjudication or Indemnity Bond Requirement

Notwithstanding the protections provided the program administrators in the Rules, in the event the program administrators are uncertain as to the beneficiaries entitled to receive a distribution of the employee's proceeds or their proper share, or in the event there is any question as to the legal right of any beneficiary to receive a distribution, or in the event of a dispute by a beneficiary or a beneficiary's descendants as to the proper distribution, or in the event there are claims to the distribution by creditors of the employee's estate, by the employee's surviving spouse, by one or more of the employee's children, by the employee's executor, administrator or other personal representative, by the employee's heirs or by anyone else, the program administrators reserve the right, in their sole discretion, to do the following:

    (a)    to require the parties to adjudicate their respective rights;

    (b)    to require an indemnity bond protecting the program administrators for the distribution; or

(c)     notwithstanding Paragraphs 5.6(a) and (b) above, to deposit the amount in question with a court of competent jurisdiction, in which event the program administrators and all Participating Companies shall have no further liability to anyone with respect to such amount.

5.7     Protection Against Claims.7  Protection Against Claims

(a)     A distribution by the program administrators in accordance with an employee's beneficiary designation and the Rules, in good faith and in reliance on information provided to the program administrators, discharges the program administrators and all Participating Companies from all claims arising out of the execution of the employee's beneficiary designation and the distribution of the employee's proceeds, whether or not the distribution is consistent with the beneficial ownership of the program proceeds as among the employee and other parties, the beneficiaries and their successors.

(b)     The protections provided by the Rules shall have no bearing on the rights of persons in disputes among themselves or their successors concerning the beneficial ownership of the employee's proceeds, as affected by the death of the employee.

20

## 6.0   MAJOR CHANGES EFFECTIVE WITH THE OCTOBER 1, 1994   REVISION OF THE RULES.

### 6.1   General

Effective on the effective date of the Rules, the following major provisions of the Rules as in effect on or after March 18, 1985, and revised September 1, 1991, shall be deemed no longer applicable under the Rules. These changes are in addition to a number of minor amendments made throughout the Rules for clarification purposes and which are also effective on the effective date of the Rules.

### 6.2   Lineal Descendants per Stirpes

Lineal descendants per stirpes (as defined in Paragraph 1.6(g) and referenced in Subsections 2.4, 3.5, 3.11, 4.2, 4.3, 4.4, 4.5, 4.6, 4.7, 4.9, 5.3and related provisions throughout the Rules in effect on March 18, 1985, and revised September 1, 1991), are no longer entitled to receive the designated beneficiary's share of the employee's distribution as substitute beneficiaries in place of and with the same priority as the beneficiary designated on the employee's beneficiary designation form, except as provided by an employee in a beneficiary designation made in accordance with the last sentence of Paragraph 2.1(d) above or after the effective date of the Rules.

### 6.3   Revocation or Change of Beneficiary Designation by Attorney in Fact

It is no longer required that a court order be obtained approving a revocation or change in a beneficiary designation made by an attorney in fact (in accordance with Paragraph 3.3(d) and related provision throughout the Rules in effect on March 18, 1985, and revised September 1, 1991), provided the attorney in fact was acting pursuant to a durable power of attorney that provides authorization for making a revocation or change in the employee's beneficiary designation.  Paragraph 3.3 (d) has also been changed to eliminate the procedures for revoking or changing a beneficiary designation through a custodianship or conservatorship (which can be obtained by court order outside the Rules).

### 6.4   Survival Requirement

An employee is no longer permitted to extend the survival period requirement for a beneficiary beyond 120 hours up to a maximum of 30 days (in accordance with Paragraph 3.4 (c) and related provisions throughout the Rules in effect on March 18, 1985, and revised September 1, 1991), except as provided by an employee in a beneficiary designation made in accordance with the last sentence of Paragraph 2.1(d) above on or after the effective date of the Rules.

21

6.5     Distribution to After-Born or After-Adopted Child

An employee is no longer presumed to have directed distribution of his proceeds to or on behalf of his children born or adopted after the filing and acceptance of his beneficiary designation unless indicated to the contrary (in accordance with Subsection 3.11 and related provisions throughout the Rules in effect on March 18, 1985, and revised September 1, 1991), except as provided by an employee in a beneficiary designation made in accordance with the last sentence of Paragraph 2.1(d) above on or after the effective date of the Rules.

6.6     Multiple Primary Beneficiaries

If one or more primary beneficiaries do not survive the employee's death, the non-surviving primary beneficiary's share shall no longer be distributed to the surviving primary beneficiaries in the proportion their shares bear to each other (in accordance with Subparagraph 4.3 (b) (2) and related provisions throughout the Rules in effect on March 18, 1985, and revised September 1, 1991), except as provided by an employee in a beneficiary designation made in accordance with the last sentence of Paragraph 2.1(d) above on or after the effective date of the Rules.

6.7     Multiple Contingent Beneficiaries

If one or more contingent beneficiaries do not survive the employee's death, the non-surviving contingent beneficiary's share shall no longer be distributed to the surviving contingent beneficiaries in the proportion their                              shares bear to each other (in accordance with Subparagraph 4.4 (b) (2) and related provisions throughout the Rules in effect on March 18, 1985, and revised September 1, 1991), except as provided by an employee in a beneficiary designation made in accordance with the last sentence of Paragraph 2.1(d) above on or after the effective date of the Rules.

6.8     Distribution When No Surviving Primary or Contingent Beneficiary Exists

In the event an employee making a beneficiary designation has no primary or contingent beneficiary who survives his death, the employees' proceeds shall be distributed in accordance with Paragraph 4.8 above, unless the employee provides otherwise in a beneficiary designation made in accordance with the last sentence of Paragraph 2.1(d) above on or after the effective date of the Rules.

6.9     Distribution in Installments

If an installment beneficiary does not survive the employee's death, the non-surviving installment beneficiary's share shall no longer be distributed to the surviving beneficiaries in the proportion their shares bear to each other (in accordance with Subparagraph 4.9 (a) (2) and related provisions throughout the Rules in effect on March 18, 1985, and revised

22

September 1, 1991); rather, the non-surviving installment beneficiary's share shall be distributed to the surviving beneficiaries in equal shares unless provided otherwise by an employee in a beneficiary designation made in accordance with the last sentence of Paragraph 2.1(d) above on or after the effective date of the Rules.

An employee shall no longer have the right to grant an installment beneficiary the power to appoint to any person, including the installment beneficiary's estate, all or a part of the installments remaining undistributed during the installment beneficiary's lifetime or at the time of the installment beneficiary's death (in accordance with Paragraph 4.9(c) and related provisions throughout the Rules in effect on March 18, 1985, and revised September 1, 1991), except as provided by an employee in a beneficiary designation made in accordance with the last sentence of Paragraph 2.1(d) above on or after the effective date of the Rules.

23

C

IN THE CIRCUIT COURT, SEVENTH
JUDICIAL CIRCUIT, IN AND FOR
ST. JOHNS COUNTY, FLORIDA

Public Records of
St. Johns County, FL
Clerk# 02-046617
O.R. 1797 PG 743
09:31AM 08/12/2002
REC $0.00    SUR $0.00

CASE NO. CA02-1598
DIVISION 55

I HEREBY CERTIFY THAT THIS DOCUMENT
IS A TRUE AND CORRECT COPY AS APPEARS
ON RECORD IN ST. JOHNS COUNTY. FLORIDA
WITNESS MY HAND AND OFFICIAL SEAL
THIS _15th_ DAY OF _August_ 2002
CHERYL STRICKLAND, CLERK

BY: _Amy B Mulligan_ D.C.

STATE OF FLORIDA
DEPARTMENT OF INSURANCE,
Petitioner,

vs.

FUTURE FIRST FINANCIAL GROUP, INC., and LIFE
SETTLEMENT SERVICES CORP.,
Respondent.

METLIFE

JAN 21 2003

GLI-U-8

2002 AUG -9 PM 3: 57 FILED

## ORDER APPOINTING CONSERVATOR

THIS MATTER came to be heard by the Court upon the Emergency Petition for Appointment of Conservator filed by the Petitioner, State of Florida, Department of Insurance (hereinafter "DEPARTMENT") against the Respondents, Future First Financial Group, Inc. (hereinafter "FUTURE FIRST") and Life Settlement Services Corp. (hereinafter "LIFE SETTLEMENT"). At the hearing on the 6th and the 7th day of August, 2002, the Petitioner was represented by Michael H. Davidson, Esquire and the Respondents were represented by Christopher A. White, Esquire. The Court heard and considered the testimony of Janice S. Davis a Regulator and Field Examiner with the Florida Department of Insurance. The Court also received and reviewed all the documentary evidence and heard and considered argument of counsel.

The Department is an agency of the State of Florida charged with licensing and regulating viatical settlement providers in the State of Florida. The Department has the authority to regulate viatical settlement providers pursuant to Florida Statute Chapter 626.99285, Florida Statutes Chapter 624.310, Florida Statutes Chapter 626.901 and Florida Statutes Chapter 626.989. The Respondent, Future First, is a Florida corporation located and doing business in St. Johns County, Florida and is a revoked viatical settlement provider. It's license was revoked by order of the Department entered on May 17, 2002. Section 626.9915(1) Florida Statutes provides and requires

EXHIBIT "C"

OR1797PG0744

that a revoked viatical insurance provider conclude its operations and cease and desist its business affairs at the time of the revocation.  Because of the revocation, Future First can no longer legally solicit, negotiate, advertise or effectuate new viatical contracts and has to immediately proceed to conclude its affairs and the business it was transacting at the time of the revocation.  The Department, pursuant to Florida Statute 626.9915, retains continuing jurisdiction over Future First until all its viatical contracts have been fulfilled, or canceled or have expired and its continued maintenance and service of those viatical policies is subject to the Department's approval.

According to the testimony and exhibits offered through Ms. Davis, Future First records revealed that Future First: (1) has continued  to operate as usual since its license revocation rather than cease business and conclude its affairs as required pursuant to the Florida law and (2) has insufficient funds in its disclosed accounts to continue to maintain the premiums for the policies purchased by its investors.  Additionally, Ms. Davis testified that a review of the records provided to her from Future First show that Future First collected approximately $400 million in capital from approximately 9400  investors and purchased approximately $318 million worth of insurance with approximatley 2600 policies.

Future First's records reveal that a small number of these policies are what the industry terms as "paid up policies", the others require premimums to be paid on a monthly or other regular basis in order for them to remain in force.

The Final Order issued by the Department on May 17, 2002 revoking Future First's license stated as follows:

> Respondent's, Future First Financial Group, Inc., license shall be revoked pursuant to Section 626.9914, Florida Statutes immediately upon entrance of this Final Order. As a condition of said revocation, Respondent must proceed immediately following effective date of the revocation, to conclude the affairs it is transacting under its license.  The provider may not solicit, negotiate, advertise, or effectuate new contracts.  The Department retains jurisdiction over the provider until all contracts have been  fulfilled or canceled or have expired.  Respondent may continue maintain and service viatical policies subject to the approval of the Department.

METLIFE

JAN 2 1 2003

GLI - U - 8

UR1/9/P6U/45

The purchase agreement between Future First Financial Group, Inc. and each investor provided in pertinent part as follows: "Purchaser is not required to make any payment other than the purchase price" and " Trustee will pay insurance policy(ies) premiums until actual maturity(ies) out of Fidelity Viatical Special Trust Account." Ms. Davis testified that her review of the bank records show that there were insufficient funds in the Fidelity Viatical Special Trust Account to continue payment of the required premiums on all of the policies purchased by investors.

Subsequent to the Order of the Department revoking its license, Future First, entered into a service agreement with Life Settlement Service Corp to service the policies of Future First investors without the permission of the Department. This agreement was entered into by Future First on the 21st day of June, 2002 and provided that Life Settlements would, among other things, review policies, monitor viators, conduct mailings, advertising, trustee provisions, legal referrals, file storage, medical life expectancy, and office space, all relative to the policies and investor activities for viatical settlement policy of Future First. This is in clear contradiction of and an attempt to circumvent the Department's Order Revocation of May 17th provisions of Florida Statutes Chapter 626.

In addition, the documents provided by Future First and Life Settlements to the Department included two (2) pieces of correspondence, one dated July 8, 2002 and the other dated July 18, 2002.

In the July 8, 2002 letter, forwarded by Life Settlements Service Corporation to investors of Future First Financial Group, the letter provided in pertinent part,

"The Fidelity Trust has advised Service Corp the Premium Escrow account has insufficient funds to make future premium payments on insurance policies. Premium payments must be made according to policy requirements in order to insure the policy stays in force and in good standing. Service Corp. management and staff has six years of experience in servicing over 9000 investors monthly.

These circumstances have a solution, but there is a very time sensitive deadline. You must act now or your policy investment will lapse, resulting in an unnecessary loss. The Trust account that disburses premium payments is prepared to facilitate all payments.

Please provide a check payable to the *Fidelity Trust Special Account* for premium payments, and a check payable to *Life Settlement Service Corp* for servicing and monitoring. See enclosed invoice."

The July 18, 2002 letter, forwarded by Life Settlements Service Corporation to investors of Future

OR1797PG0746

First Financial Group, provided in pertinent part,

>    "Enclosed please find an invoice that requires your prompt attention.  We understand that you may
>    or may not have already received an invoice regarding this investment.  We urge that you carefully
>    review the enclosed statement regarding this investment only.
>
>    This may be one of several investments you have, which will result in several invoices for individual
>    policies.  If you have several policies that you have investments on, you will receive a statement for
>    each of those as we find premiums due.  Based on our current research, these premiums are due
>    immediately in order to keep this policy active.
>
>    Pleased be advised that time is of the essence in order to keep the insurance policy active."

These letters clearly show that Future First was attempting to continue its viatical settlement obligations through a third party, namely Life Settlements, and was not concluding its affairs as ordered, but was soliciting additional funds through a third party from investors in contradiction of its agreement with those investors. The relationship between Future First and Life Settlement is not at an arm's length,  and the agreement was approved by the Department.

From the testimony before this Court it is clear that (1) Future First had its license revoked for its failure to follow the laws and regulations regarding viatical insurance settlements by the Florida Department of Insurance on May 17, 2002; (2)  the Order of revocation specifically provided that the "Respondent must proceed immediately.....to conclude the affairs it is transacting under its license" and that the "Department retains jurisdiction over the provider until all contracts have been fulfilled or canceled or have expired"; (3)  the documents provided by Future First reveal and the testimony of Ms. Davis confirms that Future First did not attempt to "immediately" conclude the affairs it was transacting; (4) there are insufficient funds to insure payments for policy premiums for which Future First was responsible.  (Parenthetically, in the event there are other funds available to Future First, those funds and the sources of those funds, were not disclosed in the documents provided to the Department.); (5) subsequent to the revocation of the license of Future First, Future First negotiated and executed a servicing contract with the Respondent, Life Settlement, and that members of the management of Future First positioned themselves in management positions for Life Settlement Services Corp; and (6)  Life Settlement has solicited funds from Future

METLIFE
JAN 2 1 2003
GLI-U-8

OR1797PG0747

First investors.

It is clear from the testimony presented by Ms. Davis and the documents and other evidence presented to the Court, that the investors of Future First are in jeopardy of losing their entire investment if Future First is allowed through Life Settlement to control the investments and the payment of the policy premiums. This Court will not allow Future First and its management team, who were responsible for putting its investors in a perilous financial situation, to again subject these same investors to possible further financial peril and losses by assuming control and soliciting funds through a newly formed corporation.   Accordingly, this Court finds that it is evident under the circumstances of this case, considering all of the evidence presented, that a Conservator should be appointed for Future First Financial Group, Inc. in order to prevent irreparable loss, damage, or injury to investors in viatical and/or life settlement contracts effectuated by Future First Financial Group, Inc.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that David Levine, of Tew Cardenas Rebak Kellogg Lehman DeMaria Tague Raymond & Levine, L.L.P. (Conservator), is hereby appointed Conservator of Future First and of its assets and property as follows and with the following powers and authority:

1.    The Conservator is hereby authorized and empowered to take immediate possession of all property and assets belonging to Future First of every kind whatsoever and wherever located including, but not limited to:

(a)    ll life insurance policies and the proceeds therefrom (including death benefits) owned or held beneficially, directly or indirectly, by or for the benefit of Future First, The Fidelity Trust, and/or METLIFE any successors or assigns of the foregoing entities, that were purchased from the date of inception of Future First through the present date (Policies.)

JAN 21 2003

GLI-U-8

(b)    all assets of Future First including, but not limited to: computer hardware, databases, software, Investor and viator files relating to the Policies, all accounting and financial records including those pertaining to

premium payments and receipt and distribution of proceeds on the Policies, any deposits of cash, bonds or guarantees, filing cabinets, office supplies, any leases of office space, and telephone systems;

(c) all premium reserve accounts, bank accounts, and any other depository accounts, wherever situated, into which Future First Investor funds or proceeds from Future First Policies have been deposited;

(d) any trust, including The Fidelity Trust, and the assets thereof, as well as any predecessor or successor trust, or any affiliated trust set up pertaining to the business of Future First;

(e) all rights of action, books, papers, data processing records, evidences of debt, bank accounts, savings accounts, certificates of deposit, stocks, bonds, debentures, and other securities, mortgages, furniture, fixtures, office supplies and equipment, and all real property of Future First, wherever situated; and

(f) all other assets and property acquired with the proceeds of funds or assets of Future First, including The Fidelity Trust (Paragraphs 1(a)-(f) collectively referred to as Conservatorship Assets).


**IT IS FURTHER ORDERED** that the Conservator is given directions and authority to accomplish the following:

2. To manage all Conservatorship Assets pending further action by this Court including, but not limited to, the evaluation of the Policies, and to take the necessary steps to protect the Investors' interests including, but not limited to, the liquidation, sale, or financing of the Policies to institutional buyers and/or financiers, and the assessment to Investors of future premium payments;

3. to receive and collect any and all sums of money due or owing on the Policies to Future First or its agents whether the same are due or shall hereinafter become due and payable;

4. to seek the return of any cash, bond, or guarantee on deposit with any regulatory agency or other entity on behalf of Future First or its agents;

5. to make such payments and disbursements as may be necessary and advisable for the preservation of the Conservatorship Assets and as may be necessary and advisable in discharging his duties as

OR1797PG0749

Conservator including, but not limited to, the timely payment from available funds or proceeds of financing of all premiums for Policies that have not yet matured;

6.    to monitor the viators of the Policies by tracking the location of the viators and periodically checking the health of the viators;

7.    to receive notice of the death of viators, file death claims on the viators, and collect the proceeds paid on the Policies as such mature;

8.    subject to further order of the Court, to disburse to Investors and other creditors of Future First the proceeds paid on matured Policies, and the proceeds of other Conservatorship Assets collected by the Conservator;

9.    to give notice to Investors, at their last-known mailing address, of this Conservatorship Order within thirty (30) days of the entry of this Order and to establish a method by which Investors may obtain periodic updates;

10.    to retain or discharge attorneys, accountants, computer consultants, trustees, and other persons as may be advisable or necessary to the exercise of the duties of the Conservator subject to application to and approval by the Court;

11.    to employ, compensate, or discharge office staff;

12.    to open and inspect any and all mail and/or deliveries, and to notify any insurance company or third party administrator and the United States Postal Service to effect the forward delivery of any mail related to the Conservatorship Assets to a mail depository under the control of the Conservator;

13.    to investigate the manner in which the affairs of Future First were conducted and institute such legal actions and legal proceedings, for the benefit and on behalf of Future First and Investors and other creditors, as the Conservator deems necessary against those individuals, corporations, partnerships, associations, and/or unincorporated organizations, which the Conservator may claim to have wrongfully, illegally, or otherwise improperly misappropriated or transferred monies or other proceeds directly or indirectly traceable from Investors

in Future First including against Future First and the officers, directors, shareholders, employees, affiliates, and any

persons acting in concert or participation with them, or against any transferees of monies or other proceeds directly

or indirectly traceable from Investors to Future First; provided such actions may include, but not be limited to,

seeking imposition of constructive trusts, disgorgement of profits, recovery and/or avoidance of fraudulent transfers

under Florida Statute sections 726.101, et seq., or otherwise, rescission and restitution, the collection of debts, and

such orders from this Court as may be necessary to enforce this Order;

      14.   to pursue any and all causes of action belonging to Future First;

      15.   to present to this Court, within thirty (30) days of the date of this Order, a preliminary report

reflecting the status of the Conservatorship, upon receipt of which the Court may institute such further proceedings

as the Court deems advisable.  Thereafter, unless otherwise ordered by the Court, commencing on January 15, 2003,

the Conservator shall file quarterly reports with the Court apprising the Court of its progress;

      16.   to defend, compromise, or settle legal actions, including the instant proceeding, wherein Future

First or the Conservator is a party, commenced either prior to or subsequent to this Order, with authorization of this

Court; except, however, in actions where Future First is a nominal party, as in certain foreclosure actions where the

action does not effect a claim against or adversely affect the assets of Future First, the Conservator may file

appropriate pleadings in his discretion.  The Conservator may waive any attorney-client, accountant-client or any

other privilege held by Future First;

      17.   to assume control of, and be named as authorized signatory for, all accounts in any bank,

brokerage firm, financial institution, or other depository which has possession, custody, or control of any assets or

funds, or the proceeds, wherever situated, of Future First and, upon order of this Court, of any other entities;

      18.   to make or authorize such payments and disbursements for customary operating expenses from

the funds and assets taken into control or thereafter received by the Conservator, and incur, or authorize the

incurrence of, such expenses and make, or authorize the making of, such agreements as may be reasonable,

necessary, and advisable in discharging his duties as Conservator;

OR1797P60751

19.   to sell assets or property including Conservatorship Assets, with the approval of the Court;

20.   to accept, continue, reject, cancel or negotiate modifications to excutory contracts and unexpired leases as allowed by the terms thereof or with Court approval;

21.   to exercise those other powers necessary to implement this Conservatorship pursuant to the orders and directives of the Court.


**IT IS FURTHER ORDERED** as follows:

22.   Future First and its directors, officers, shareholders, agents, and other persons who are in custody or control of Conservatorship Assets, including The Fidelity Trust and Life Settlement Services Corp. (Life Settlement), shall immediately execute such documents as may be necessary and take any other action as necessary to immediately transfer the ownership and beneficial rights to the Conservatorship Assets to the Conservatorship.


23.   All banks, brokerage firms, financial institutions, and other business entities and individuals which have possession, custody, or control of any assets, funds, or accounts, in the name of, or for the benefit of, Future First shall cooperate expeditiously in the granting of control and authorization as a necessary signatory as to said assets and accounts to the Conservator and in turning over and transferring to the Conservator any and all funds in such accounts and copies of all records and statements concerning such accounts.  Such banks, brokerage firms, financial institutions, and other business entities and individuals shall also identify to the Conservator whether any additional accounts exist that appear to be related to or associated with Future First; and, if such accounts do exist, such banks, brokerage firms, financial institutions, and other business entities and individuals shall cooperate expeditiously in the granting of control and authorization as a necessary signatory as to said assets and accounts to the Conservator and in turning over and transferring to the Conservator any and all funds in such accounts and copies of all records and statements concerning such accounts.

METLIFE

JAN 2 1 2003

GLI-Wst 8

24.   Unless and as authorized by the Conservator, no person or entity, including Future First and

OR1797PG0751

19.   to sell assets or property including Conservatorship Assets, with the approval of the Court;

20.   to accept, continue, reject, cancel or negotiate modifications to excutory contracts and unexpired leases as allowed by the terms thereof or with Court approval;

21.   to exercise  those other powers necessary to implement this Conservatorship pursuant to the orders and directives of the Court.

**IT IS FURTHER ORDERED** as follows:

22.   Future First and its directors, officers, shareholders, agents, and other persons who are in custody or control of Conservatorship Assets, including The Fidelity Trust and Life Settlement Services Corp. (Life Settlement), shall immediately execute such documents as may be necessary and take any other action as necessary to immediately transfer the ownership and beneficial rights to the Conservatorship Assets to the Conservatorship.

23.   All banks, brokerage firms, financial institutions, and other business entities and individuals which have possession, custody, or control of any assets, funds, or accounts, in the name of, or for the benefit of, Future First shall cooperate expeditiously in the granting of control and authorization as a necessary signatory as to said assets and accounts to the Conservator and in turning over and transferring to the Conservator any and all funds in such accounts and copies of all records and statements concerning such accounts.  Such banks, brokerage firms, financial institutions, and other business entities and individuals shall also identify to the Conservator whether any additional accounts exist that appear to be related to or associated with Future First; and, if such accounts do exist, such banks, brokerage firms, financial institutions, and other business entities and individuals shall cooperate expeditiously in the granting of control and authorization as a necessary signatory as to said assets and accounts to the Conservator and in turning over and transferring to the Conservator any and all funds in such accounts and copies of all records and statements concerning such accounts.

24.   Unless and as authorized by the Conservator, no person or entity, including Future First and

UR179/PGL75

its principals, shall take any action, nor purport to take any action, in the name of or on behalf of Future First.

25.   Future First, Life Settlement and The Fidelity Trust and their principals, officers, agents, employees, attorneys, and attorneys-in-fact, shall cooperate with and assist the Conservator including, if deemed necessary by the Conservator, appearing for deposition testimony and producing documents, upon five (5) business days notice (which may be sent by facsimile), and shall take no action, directly or indirectly, to hinder, obstruct, or otherwise interfere with the Conservator in the conduct of his duties or to interfere in any manner, directly or indirectly, with the custody, possession, management, or control by the Conservator of the funds, assets, premises, and choses in action described above.

26.   All persons and entities, including Life Settlement, The Fidelity Trust, Future First, and their subsidiaries, affiliates, officers, directors, trustees, agents, servants, employees, attorneys, and all persons acting on their behalf, under their direction and control, and/or in concert or participation with them, and further including any banks or financial institutions, wherever chartered or located, life insurance companies, federal or state agencies, viators, viatical settlement providers, and viatical settlement brokers who receive actual notice of this Conservatorship Order, by personal service, facsimile transmission or otherwise, shall promptly deliver and surrender to the Conservator:

(a)   all Conservatorship Assets in the possession of or under the control of any one or more of them; and

(b)   all books and records of any kind pertaining to the Conservatorship Assets, to the Investors, or to the viators whose lives are insured by the Policies.

27.   All persons and entities, including Life Settlement, The Fidelity Trust, Future First, and their subsidiaries, affiliates, officers, directors, trustees, agents, servants, employees, attorneys, and all persons acting on their behalf, under their direction and control, and/or in active concert or participation with them, and further including any banks or financial institutions, wherever chartered or located, life insurance companies, federal and state agencies, viators, viatical settlement providers, and viatical settlement brokers who receive actual notice of

METLIFE

JAN 2 1 2003

GLI-U-8

this Conservatorship Order, by personal service, facsimile transmission or otherwise, fully cooperate with and assist the Conservator and that they take no action, directly or indirectly, to hinder or obstruct the Conservator in the conduct of his duties or to interfere in any manner, directly or indirectly, with the custody, possession, or control exercised by said Conservator.

28.   The Conservator is authorized, without breaching the peace, to enter and secure any premises under the control of Future First or its agents, wherever located or situated, in order to take possession, custody or control of, or identify the location or existence of, any Conservatorship Assets.

29.   The Conservator and his professionals and consultants may apply to the Court for compensation, from time to time, in a reasonable sum to be determined by the Court and from such sources as approved by the Court and for reimbursement for reasonable expenses incurred by them in connection with their duties. The fees and expenses of the Conservator and for professionals and consultants shall have priority over any other claims made against Future First.

30.   Except by leave of Court during the pendency of this Conservatorship, all creditors and other persons or entities seeking money, damages or other relief from Future First or its agents, and all others acting on behalf of any such creditors or other persons or entities, including sheriffs, marshals, and other officers and their deputies, and their respective attorneys, servants, agents, and employees, are hereby stayed and restrained from doing any act or thing whatsoever to interfere with Future First or its agents, in an orderly transfer of the Conservatorship Assets or the Conservator or to the possession of or management by the Conservator of the Conservatorship Assets, or to interfere in any manner during the pendency of this proceeding with the exclusive jurisdiction of this Court over Future First.  This Conservatorship Order shall not stay or restrain any pending or future action whatsoever by any government agency or any representative on behalf of any government.  All sheriffs, marshals, police officers and other law enforcement officials shall assist the Conservator in the enforcement of this court's orders.

31.   With the Court's prior approval, the Conservator is solely and fully authorized to proceed with

U-8

O R 1 7 9 7 P:G 0 7 5 4

any filing he may deem appropriate under the United States Bankruptcy Code as to Future First.

32.   Title to all property, real or personal, all contracts, rights of action and all books and records of Future First, wherever located within or without this state, is vested by operation of law in the Conservator until further order of the Court.

33.   Upon request by the Conservator, any company providing telephonic services to Future First shall provide a reference of calls from the number presently assigned to Future First to any such number designated by the Conservator or perform any other charges necessary to the conduct of the Conservatorship.

34.   Any entity furnishing water, electric, telephone, sewage, garbage or trash removal services to Future First shall maintain such service and transfer any such accounts to the Conservator unless instructed to the contrary by the Conservator.

35.   The United States Postal Service is directed to provide any information requested by the Conservator regarding Future First, and to handle future deliveries of Future First's mail as directed by the Conservator.

36.   No bank, savings and loan association, other financial institution, or any other person or entity shall exercise any form of set-off, alleged set-off, lien, or any form of self-help whatsoever, or refuse to transfer any funds or assets of Future First to the Conservator's control without the permission of this Court.

37.   No bond shall be required in connection with the appointment of the Conservator and persons employed or retained by the Conservator.  Except for any act of gross negligence, the Conservator and his retained professionals and consultants shall not be liable for any loss or damage incurred by Future First or by the Conservator's officers, agents, or employees, or any other person, by reason of any act performed or omitted to be performed by them in conjunction with the discharge of their duties and responsibilities hereunder.

38.   Service of this Order shall be sufficient if made upon Future First's attorneys or directors, facsimile, hand-delivery, overnight courier, or United States mail.

39.   In the event that the Conservator discovers that funds of Future First or of its investors have

been transferred to other persons or entities, the Conservator may apply to this Court for an Order giving the Conservator possession of such funds and, if the Conservator deems it advisable, extending this Conservatorship over any person or entity holding such funds.

40.   Immediately upon entry of this Order, the Conservator may take depositions upon oral examination of, and obtain the production documents from, parties and non-parties subject to five (5) business days notice.  In addition, immediately upon entry of this Order, the Conservator shall be entitled to serve interrogatories and requests for admission, which shall be responded to within twenty (20) calendar days of service.  Service of discovery requests shall be sufficient if made by facsimile or overnight courier; depositions may be taken by telephone or other remote electronic means.

41.   Life Settlement and The Fidelity Trust shall immediately provide the following information to the Conservator:

(a)   An accounting (including receipt and disbursement) of all funds received from Future First Investors, Future First, The Fidelity Trust, or Life Settlement, and all financial information and records pertinent thereto.

(b)   All records regarding the Policies, including servicing of or collections on the Policies.

42.   Until notified in writing by the Conservator, or until it properly exercises any contractual option to terminate servicing, Life Settlement shall continue servicing the Policies and provide daily written reports to the Conservator regarding that servicing.  All fees collected and to be collected for such servicing of the Policies shall be immediately deposited in a separate suspense account under the control of the Conservator pending further order of the Court.

43.   Any and all death benefit payments on the Policies received by Life Settlement, The Fidelity Trust, or their successors or assigns shall be immediately deposited in a separate suspense account under the control of the Conservator pending further order of the Court.

44.   Because of their solititation of funds from Future First Investors and Future First, until notified

13

OR1797PG0756

otherwise in writing by the Conservator, Life Settlement, The Fidelity Trust, Future First, and/or Charles R. Sussman shall remit any monies from Investors, received pursuant to solicitation for premium payments, to the applicable insurer, and provide a daily written report thereof to the Conservator. Absent other agreement between the Conservator and Mr. Sussman/ Fidelity Trust, the Conservator shall assume premium payment responsibilities currently being discharged by Mr. Sussman/ Fidelity Trust by a date no later than twenty (20) days of the date of this Order. During this transition period Mr. Sussman/ Fidelity Trust will continue to be reasonably compensated for their services.

45. Life Settlements shall deliver to the Conservator all Policies and Policy account and payment information relative to the Policies, including identification of all investors, their addresses and other information necessary for the Conservator to determine the payment history, any current payments due, the name of the investors associated with each Policy of Future First.

46. Life Settlement, Future First, The Fidelity Trust, and Charles R. Sussman, shall immediately provide to the Conservator a copy of any notice, in their possession, custody, or control, from any insurer, of lapse, cancellation, or other indication of Policy termination, or of any notice suggesting an insurer's intent to terminate Policy coverage by reason of lapse, cancellation, or otherwise. For purposes of this Paragraph, immediate shall mean no later than twenty-four (24) hours after execution of this Order or receipt of such notice by the foregoing person or entities.

47. This Court retains jurisdiction over the parties and subject matter of this action to ammend or modify this Order to either enlarge or restrict the activities of the Conservator and for all other purposes.

DONE AND ORDERED this 9th day of August, 2002, at St. Augustine, St. Johns County, Florida.

J. MICHAEL TRAYNOR
CIRCUIT COURT JUDGE METLIFE

JAN 2 1 2003

GLI-U-3

Copies to:
Michael H. Davidson, Esq.
Christopher A. White, Esq.



IN THE CIRCUIT COURT, SEVENTH
JUDICIAL CIRCUIT, IN AND FOR
ST. JOHNS COUNTY, FLORIDA

CASE NO. CA02-1598
DIVISION 55

Public Records of
St. Johns County, FL
Clerk# 02-047091
O.R. 1798 PG 426
03:50PM  08/13/2002
REC $0.00    SUR $0.00

STATE OF FLORIDA
DEPARTMENT OF INSURANCE,
       Petitioner,

vs.

FUTURE FIRST FINANCIAL GROUP, INC., and LIFE
SETTLEMENT SERVICES CORP.,
       Respondent.

_____/

## ORDER CORRECTING CLERICAL ERROR

    This matter came to be considered by the Court upon its own motion pursuant to Florida Rule of Civil Procedure 1.540 and the Court finding that the Order Appointing Conservator in the above styled matter which was entered by this Court on 9th day of August, 2002 contained a clerical error on page 4 and that same should be corrected, it is therefore

       **ORDERED AND ADJUDGED** that on page 4, in the second paragraph which begins with the words " These letters clearly show...", the last sentence should read as follows: " The relationship between Future First and Life Settlement is not at arm's length,  and the agreement was not approved by the Department.".

       **DONE AND ORDERED** this 13th day of August, 2002, at St. Augustine, St. Johns County, Florida.

                       **J. MICHAEL TRAYNOR**
                       **CIRCUIT COURT JUDGE**

Copies to:
Michael H. Davidson, Esq.
Christopher A. White, Esq.

I HEREBY CERTIFY THAT THIS DOCUMENT
IS A TRUE AND CORRECT COPY AS APPEARS
ON RECORD IN ST. JOHNS COUNTY FLORIDA
WITNESS MY HAND AND OFFICIAL SE-
THIS 15th DAY OF August 2002
CHERYL STRICKLAND, CLERK

BY

**D**

**DAVID M. LEVINE, CONSERVATOR**
for Future First Financial Group, Inc.
Suite 2600
201 S. Biscayne Boulevard
Miami, FL 33131-4336
Telephone:  (305) 536-1112
Facsimile:  (305) 536-1116

January 17, 2003

Via FedEx
Metropolitan Life Insurance Company
Group Life Claims
5950 Airport Road
Oriskany, NY 13424

RE:     Insured: Paul Paxon
        Claim Number: 1869102

Dear Sir/Madame:

        Enclosed please find the completed Beneficiary Statement for the above policy. As Conservator for the Fidelity Trust, this office has completed the Beneficiary Statement on behalf of the beneficiaries indicated in your records.  **We hereby request that all questions regarding the processing of this claim be directed to our office in Jacksonville, FL at the following address:   Future First Conservatorship, 1301 Riverplace Blvd., Suite 1700A, Jacksonville, FL 32207, or by telephone at (904) 398-3653.  Additionally, we request that the death benefit for this policy, payable to The Fidelity Trust, be sent to our Jacksonville, FL office upon completion of the processing of this claim.**  The bases for our requests to process this claim and collect the death benefit are twofold.

        First, on August 9, 2002, an Order Appointing Conservator for Future First Financial Group, Inc., of Ponte Vedra, Florida ("Future First"), was entered by the 7th Judicial Circuit Court, In and For St. Johns County, Florida, by The Honorable J. Michael Traynor.  A copy of the Order and the amendment thereto, issued on August 14, 2002, was sent to your Company at the end of August 2002.

        The Order appointed the undersigned, David M. Levine, as Conservator of Future First and authorized the Conservator to take immediate possession of all Conservatorship Assets.  Specifically, Paragraph 1(a) of the Order states in pertinent part,

> 1.      The Conservator is hereby authorized and empowered to take immediate possession of all property and assets belonging to Future First of every kind whatsoever and wherever located including, but not limited to:
>         (a) all life insurance policies and the proceeds therefrom (including death benefits) owned or held beneficially, directly or indirectly, by or for the benefit of Future First, The Fidelity Trust, and/or Investors, or any successors or assigns of the foregoing entities, that were purchased from the date of inception of Future First through the present date (Policies.)....

**METLIFE**

**JAN 2 1 2003**

**GLI-U-8**

EXHIBIT "D"

The above-referenced policy was held in the name of Future First Financial Group for the benefit of Future First Financial Group investors. Accordingly, as a Conservatorship Asset, the Conservator is authorized by the Order to process the claim and collect the death benefit from this policy.

In addition to the language of Paragraph 1(a) of the Order, cited above, these requests are consistent with the provisions of Paragraphs 26 and 27 of the Order, which read as follows:

> 26.  All persons and entities, including Life Settlement, The Fidelity Trust, Future First, and their subsidiaries, affiliates, officers, directors, trustees, agents, servants, employees, attorneys, and all persons acting on their behalf, under their direction and control, and/or in concert or participation with them, and further including any banks or financial institutions, wherever chartered or located, **life insurance companies,** federal or state agencies, viators, viatical settlement providers, and viatical settlement brokers who receive actual notice of this Conservatorship Order, by personal service, facsimile transmission or otherwise, shall promptly deliver and surrender to the Conservator:
>
>   (a)  all Conservatorship Assets in the possession of or under control of any one or more of them;
>   and
>   (b)  all books and records of any kind pertaining to the Conservatorship Assets, to the Investors, or to the viators whose lives are insured by the Policies.
>
> 27.  All persons and entities, including Life Settlement, The Fidelity Trust, Future First, and their subsidiaries, affiliates, officers, directors, trustees, agents, servants, employees, attorneys, and all persons acting on their behalf, under their direction and control, and/or in concert or participation with them, and further including any banks or financial institutions, wherever chartered or located, **life insurance companies,** federal or state agencies, viators, viatical settlement providers, and viatical settlement brokers who receive actual notice of this Conservatorship Order, by personal service, facsimile transmission or otherwise, fully cooperate with and assist the Conservator and that they take no action, directly or indirectly, to hinder or obstruct the Conservator in the conduct of his duties or to interfere in any manner, directly or indirectly, with the custody, possession, or control exercised by said Conservator. (emphasis added.)

As a second basis for our requests, enclosed please find a copy of a Limited Power of Attorney signed by the beneficiaries authorizing the Fidelity Trust to execute these claim documents on their behalf.

If you need any additional information, please do not hesitate to contact our Jacksonville office at the address above, or by telephone at (904) 398-3653.

**METLIFE**

Very truly yours,

JAN 21 2003

GLI-U-8

David M. Levine, as Conservator

Cc:   Michael M. Bajalia, Esq.

E

MET-LIFE
NOV 15 2002
GLI-U-9

(Before Completing This Form, See The Reverse Side)
(Do Not Erase Or Attempt To Make Corrections, Use A New Form)

**Important:**
The shareholder may want to consult with a personal legal or tax advisor, the state insurance department or other appropriate regulatory authorities before completion of this form.

Absolute Assignment Pursuant to a Viatical Settlement (including Designation of Beneficiary by Assignee and Spouse Waiver for Assignment of Group Life Benefits)

Group Life Insurance Plan (Plan) of   **Ameritech Health Plan**        Policy **#27857-G**

Insured's Social Security No.   **296 / 64 / 5410**   Print or Type Name of Insured   **Paul D. Paxton**

Insured's Permanent Address   **3108 Wicklow Rd., Columbus, OH 43204**

Has a Continued Protection (Waiver of Premium) claim been approved for the insured?   ☒ Yes   ☐ No

**Spouse Waiver for Assignment of Group Life Benefits**
(To Be Completed If Applicable)

**Please Read the Following Section Carefully:**

The spouse of the assignor should sign below IF the assignor is making an assignment to a person other than his/her spouse, AND the assignor is a resident of one of the following community property jurisdictions: Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, Wisconsin.

Marital Status:   ( ) Married   ( ) Divorced

*Please Note: If, as part of a divorce decree, the assignor has been ordered to assign the ownership of the Group Life Insurance benefit(s) to the former spouse, the former spouse must complete this or an appropriate waiver if the assignor assigns to someone other than the former spouse.

I, spouse of the assignor, hereby consent to this assignment and waive and release any and all community property rights in and to the subject matter of the assignment and to any employee contributions thereto, now and hereafter made from community funds.

(Signature of Spouse)          Name of Spouse - Please Print          (Date)

I Hereby Assign To   **The Fidelity Trust dated 3/13/96, Charles R. Sussman, TTEE**
Print or Type Name of Assignee

**814 Highway A1A. Suite 300. Ponte Vedra Beach. FL 32082**
(Address of Assignee)

all right, title, interest and incidents of ownership, both present and future, relating to the insured's (sign your name only by the line of the coverage(s) you intend to assign):

X _____          X _____
Basic Life Insurance, if any          Optional Life Insurance, if any

Survivor Identity Income Benefits, if any

under the Plan, including but not limited to: the right to make any applicable contributions under said Plan, the privilege of obtaining an individual policy of life insurance on the insured's Life, the right, to the extent permissible under the provisions of the Plan, to change the beneficiary and/or the contingent beneficiary, and the right to elect any available insurance option. This assignment relates to the present coverage assigned under this insurance policy (included) and any replacement or substitute policy of the same or a similar insurance company providing insurance under the Plan, and any cancelled or successor Plan provided by the Employer. If you receive a replacement or substitute policy, you should consult with your tax advisor to determine its impact, if any, on your estate, including estate tax implications.

It is understood and agreed that this assignment will be of no effect whatsoever, nor binding upon the Employer or the present insurer under the Plan until copies of this form have been signed by the Employer and present insurer, but when signed, will relate back and take effect as of the date of any signature below.

It is further understood and agreed that the Employer and the present insurer assume no obligation as to the validity or sufficiency of this assignment for any purpose whatsoever.

Dated at   **Ponte Vedra Beach** in the State of   **FL**          **March / 25 / 1999**

X _____   X _____          **Paul D. Paxton**
(Signature of Witness)          (Signature of Assignor)          (Name of Assignor - Please Print)

**Assignor's Designation of Beneficiary**

Effective as of the date of this assignment, I hereby (1) revoke any previous beneficiary designation as to the above-named insured under the Group Policy, and (2) irrevocably designate as beneficiary thereunder:

**Please See Attached Schedule**          Age ___
(Name of Beneficiary)

Residing at _____
(Street)          (City)          (State)

If living at the death of the insured, otherwise, as contingent beneficiary(ies), the following:          Age ___
(Name of Contingent Beneficiary)

Residing at _____
(Street)          (City)          (State)

Unless otherwise provided above, payment to two or more primary beneficiaries or two or more contingent beneficiaries shall be made in equal shares or to the survivors in equal shares or all to the last survivor. If there is no primary or contingent beneficiary living at the death of the insured, the amount of benefits payable because of the insured's death shall be payable to the estate of the insured. If, before the insured's death or as the insured is deceased, bankrupt a claim a lien, assignee is not living at the insured's death.

It is understood and agreed that this designation will in no way apply in respect of any survivor life insurance benefits if the Group Policy providing for such benefits names no particular survivor as a beneficiary designation and that in such event the survivor life insurance benefits will be payable only as provided in the Group Policy, this Assignment notwithstanding.

To Be Completed By Employer          To Be Completed By MetLife

by _____          by _____

Title **Health & Welfare Benefits Plan Specialist**          VP _____

Date **4-1-99**          Date **4/20/99**

G1205-Y-TERM   Printed in U.S.A.          **MetLife**          X-1318.SCR(02/98)

**COMPOSITE EXHIBIT "E"**

**IMPORTANT INFORMATION FOR AN ABSOLUTE ASSIGNMENT PURSUANT TO A VIATICAL SETTLEMENT**

► Do not erase or attempt to make corrections. Use a new form.

► The Employer must submit the form to MetLife. MetLife must receive the form within 60 days of when the assignor signs and dates the form.

► This form only applies to MetLife coverages. The assignor must fill in "N/A" (Not Applicable) in all the coverage lines that are:
   (a)  not MetLife coverages;
   (b)  any MetLife coverages the assignor does not intend to assign; and/or
   (c)  any coverages the assignor does not have.

If any coverage lines are left blank, MetLife will assume the assignor does not intend to assign that coverage and/or does not have the right to assign that coverage.

► **Spouse Waiver for Assignment of Group Life Benefits:**
Under community property law, spouses have an ownership interest in one half of income earned or property acquired during the marriage. Therefore, spousal consent may be necessary to assign Group Life Insurance benefits to someone other than the spouse. Assignors and their spouses should contact their own legal counsel for guidance pertaining to assignment of Group Life Insurance benefits.

► MetLife will only process assignments to licensed viatical settlement providers in accordance with applicable state law.

► Beneficiary designations by the assignee must be revocable.

► Unless and until the assignee designates a new beneficiary, any existing beneficiary designation on file at the time the assignment is made will remain on record and the life insurance proceeds will be paid accordingly upon receipt of a properly supported claim.

► The gift provisions of the policy will not be waived for collateral assignments.

► The beneficiary designated must comply with the definition of an eligible beneficiary as defined by the Group Life Policy.

► The following definitions may be helpful in completing the assignment form.

**Assignor:**
An individual or entity who absolutely assigns all right, title, interest and incidents of ownership of an insured's life insurance coverage. The assignor is the owner of the coverage.

**Viator:**
In general, an assignor who is a terminally ill or chronically ill insured who absolutely assigns all right, title, interest and incidents of ownership of his/her life insurance coverage to a viatical settlement provider. A viator is a type of assignor.

**Assignee:**
An individual or entity to whom a transfer of all right, title, interest and incidents of ownership of an insured's life insurance coverage is made. For a viatical assignment, the assignee is the viatical settlement provider. For a viatical reassignment, the assignee may be an individual, entity, or another viatical settlement provider.

**Viatical Settlement Provider:**
The person, or entity, that pays the viator/assignor a discounted amount of the life insurance benefit.

**Viatical Assignment:**
A viatical assignment is made when a viator absolutely assigns all right, title, interest and incidents of ownership of his/her life insurance benefit to a viatical settlement provider. The viatical settlement provider pays the insured a discounted amount of the life insurance benefit.

**Viatical Reassignment:**
A viatical reassignment (i.e., an assignment of previously viaticated coverage) is made when the viatical settlement provider, as the assignor/owner of the life insurance coverage of viatical reassigns all right, title, interest and incidents of ownership of the insured's life insurance coverage to an individual, entity, or another viatical settlement provider.

► **Potential Tax Consequences:**
Under Federal Law, only certain assignments made to a licensed viatical settlement provider may be eligible to receive favorable tax treatment.

MetLife assumes no liability for, nor makes any representations as to, the tax consequences to the viator of the assignment.

► **General Information on Viatical Licensure:**
Many states require viatical settlement providers to be licensed and to provide certain disclosures to persons who are considering assigning their benefits to such providers.

MET-LIFE
NOV 15 2002
GLI-U-9



**TOTAL COMPENSATIO**

**Get Involved With Your Benefits**

**Ameritech Health Plans**

**Beneficiary Designation Form**

MET-LIFE
NOV 1 5 2002
GLI-U-9

000018

**Date Produced** 3/26/99
**Soc. Sec. Num.** 59-7066765

**Beneficiary Designation**
Use this form to designate your beneficiary(ies) under the following Ameritech Life Insurance Plans: Basic Life Insurance, Basic AD&D Insurance, and Supplementary Life Insurance (if participating).

List your primary beneficiary(ies) in the space provided. If you wish to designate a secondary beneficiary, space is provided on the reverse. Once you make your beneficiary designation, be sure to sign and date this form in the Authorization section on the reverse.

**Primary Beneficiary**

| Name and Address | Soc.Sec.Num. | Birth Date | Rel* | Benefit% |
|---|---|---|---|---|
| Please See Attached Schedule | _____ | _____ | ___ | _____% |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  | _____ | _____ | ___ | _____% |
|  |  |  |  |  |
|  | _____ | _____ | ___ | _____% |
|  |  |  |  |  |
|  |  |  | Total 100% | |

*Relationship Codes: 1=Spouse, 2=Child, 3=Other

-94-5091                          Page 2                          Beneficiary Designation Form

**Secondary Beneficiary**
**Name and Address**                 Soc.Sec.Num.    Birth Date    Rel*    METⓇLIFE
                                                                           Benefits

                                                                           NOV 15 2002

                                                                           GLI-U-9

_____    _____   _____   ___

_____    _____   _____   ___

_____    _____   _____   ___

_____    _____   _____   ___    _____%

_____    _____   _____   ___

_____    _____   _____   ___

_____    _____   _____   ___    _____%

_____    _____   _____   ___

_____    _____   _____   ___

_____                                  Total 100%

*Relationship Codes: 1=Spouse, 2=Child, 3=Other

**Authorization**

I hereby designate the person or persons listed as primary and secondary beneficiary(ies) to
receive any death benefits under the Ameritech Corporation plans. I understand that this
designation automatically cancels any previous designations which I have made for this plan(s) and
that I may change this designation at any time.


x _Charles R. Sussman, TTEE_____          _3/26/99_____
**Participant Signature**   Charles R. Sussman, TTEE               **Date**

# The Fidelity Trust
## Charles R. Sussman, Trustee

MET-LIFE
NOV 15 2002
GLI-U-9

**Thursday, March 25, 1999**

ATTN: HUMAN RESOURCES
AMERITECH HEALTH PLANS SERVICE CTR.
100 HALF DAY ROAD
LINCOLNSHIRE, IL 60669
800-223-2929

| | |
|---|---|
| Insurance Company: | METROPOLITAN LIFE INS CO |
| Policy Number: | 27857G\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 |
| Insured: | PAUL      PAXTON |
| Face Amount: | $170,000.00 |
| Social Security Number: | 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 |

**Please record the enclosed forms in the following order:**
**1. ABSOLUTE ASSIGNMENT: The absolute assignment on the policy above referenced policy.**
**2. BENEFICIARY CHANGE: Change the beneficiary on the above referenced policy per the enclosed schedule.**

Please sign the enclosed forms and make copies of these forms for your records and the employee's file. Please forward the forms to the insurance company for final recording at the address listed below. We have included a pre-paid FedEx airbill from you to the insurance company for this purpose. Please also enclose the prepaid FedEx envelope that allows the insurance company to return a copy of the recorded forms to The Fidelity Trust.

Thank you for your time and your prompt attention to this matter.

Sincerely,

*Aaron Kunsberg*
Aaron Kunsberg

## PLEASE USE THE ENCLOSED PRE-PAID FED EX AIRBILL TO FORWARD TO :
### ATTN: PAULA BERRY
### METROPOLITAN LIFE INSURANCE COMPANY

177 S. COMMONS DR.
AURORA, IL 60507
630-820-7811

814 HWY A1A, SUITE 300, PONTE VEDRA BEACH, FL 32082
VOICE (904) 285-8900 FAX (904) 285-6135

### The Fidelity Trust
Charles R. Sussman, Trustee
814 HWY A1A, SUITE 300
Ponte Vedra Beach, FL  32082
VOICE: (904) 285-8900
FAX:    (904) 285-6135

MET-LIFE

NOV 1 5 2002

GLI-0-9

---

**BENEFICIARIES ON METLIFE,**
**POLICYHOLDER: AMERITECH HEALTH PLANS**
**POLICY NUMBER 27857-G,**
**FOR PAUL D. PAXTON, SSN: 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**

It is requested by the undersigneds that the beneficiary of this policy, upon the date of this designation, 03/26/99, shall be:

8.39% of the proceeds to DAVID FOOTE, if living, otherwise to the estate of said  DAVID FOOTE, provided that any proceeds becoming payable to said DAVID FOOTE will be payable to Retirement Accounts Inc. as Custodian for  DAVID FOOTE IRA Account number 136752 if said IRA Account is in effect at the Insured's death, at PO Box 173785, Denver, CO  80217-3785. If said IRA Account is not in effect, such share will be payable to said DAVID FOOTE, if living, otherwise to the estate of said DAVID FOOTE.
CHECK PAYABLE TO: RAI FBO DAVID FOOTE, 136752

5.01% of the proceeds to SMICO & CO., RANDALL BUD,  at 136 S. MAIN PO BOX 307, SMITH CIENTER, KS  66967.
CHECK PAYABLE TO: SMICO & CO.

6.35% of the proceeds to BARBARA GAUGHAN, if living, otherwise to the estate of BARBARA GAUGHAN, at  3000 N. OCEAN DR.   #6-C, SINGER ISLAND, FL  33404.
CHECK PAYABLE TO: BARBARA GAUGHAN

4.18% of the proceeds to MICHAEL MORAN and JEAN MORAN, if living, or to the survivor, if living, otherwise to the estate of the last to survive, at 9166 MEADOW DR., OMAHA, NE  68114.
CHECK PAYABLE TO: MICHAEL MORAN and JEAN MORAN

4.18% of the proceeds to SEAN BARRETTSMITH, if living, otherwise to the estate of SEAN BARRETTSMITH, at  6417 SCOTT ST., DAVENPORT, IA  52806.
CHECK PAYABLE TO: SEAN BARRETTSMITH

_Charles R. Sussman Trustee_ _____    Dated 03/26/99
Charles R. Sussman, Trustee

Recorded at AMERITECH HEALTH PLANS:

_____    Dated_____
Representative of AMERITECH HEALTH PLANS

1

## The Fidelity Trust
Charles R. Sussman, Trustee
814 HWY A1A, SUITE 300
Ponte Vedra Beach, FL 32082
VOICE: (904) 285-8900
FAX:   (904) 285-6185

MET-LIFE
NOV 1 5 2002
GLI-U-9

---

### BENEFICIARIES ON METLIFE,
### POLICYHOLDER:AMERITECH HEALTH PLANS
### POLICY NUMBER 27857-G,
### FOR PAUL D. PAXTON, SSN: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

It is requested by the undersigneds that the beneficiary of this policy, upon the date of this designation, 03/26/99, shall be:

6.68% of the proceeds to JAMES RICCI and FLORENCE RICCI, if living, or to the survivor, if living, otherwise to the estate of the last to survive, at 992 MANTON AVE., PROVIDENCE, RI 02909.
CHECK PAYABLE TO: JAMES RICCI and FLORENCE RICCI

20.88% of the proceeds to HENRY HOGEDA and OFELIA HOGEDA, if living, or to the survivor, if living, otherwise to the estate of the last to survive, at 302 MCKEE LN., SAN ANGELO, TX 76904.
CHECK PAYABLE TO: HENRY HOGEDA and OFELIA HOGEDA

15.13% of the proceeds to JOHN JONES, if living, otherwise to the estate of JOHN JONES, at PO BOX 27322, OMAHA, NE 68127.
CHECK PAYABLE TO: JOHN JONES

8.35% of the proceeds to LILLIAN EDGE and NORMAN EDGE, if living, or to the survivor, if living, otherwise to the estate of the last to survive, at 518 - 26th ST., VIRGINIA BEACH, VA 23451.
CHECK PAYABLE TO: LILLIAN EDGE and NORMAN EDGE

4.18% of the proceeds to CARL ERNST and SHARON ERNST, if living, or to the survivor, if living, otherwise to the estate of the last to survive, at 5585 BISCAYNE DR., GREENACRES, FL 33463.
CHECK PAYABLE TO: CARL ERNST and SHARON ERNST

_Charles R. Sussman, Trustee_

_____ Dated 03/26/99
Charles R. Sussman, Trustee

Recorded at AMERITECH HEALTH PLANS.

_____ Dated_____
Representative of AMERITECH HEALTH PLANS

2

# *The Fidelity Trust*

Charles R. Sussman, Trustee
814 HWY A1A, SUITE 300
Ponte Vedra Beach, FL 32082
VOICE: (904) 285-8900
FAX:    (904) 285-6135



---

## BENEFICIARIES ON METLIFE,
## POLICYHOLDER: AMERITECH HEALTH PLANS
## POLICY NUMBER 27857-G.
## FOR PAUL D. PAXTON, SSN: 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

It is requested by the undersigneds that the beneficiary of this policy, upon the date of this designation, 03/26/99, shall be:

4.18% of the proceeds to LEONARD ZINNI, if living, otherwise to the estate of LEONARD ZINNI, at 11985 US HWY -1 SUITE 105, N. PALM BEACH, FL 33408.
CHECK PAYABLE TO: LEONARD ZINNI

12.53% of the proceeds to LAINA E. MARTIN, if living, otherwise to the estate of said LAINA E. MARTIN, provided that any proceeds becoming payable to said LAINA E. MARTIN will be payable to Retirement Accounts Inc. as Custodian for LAINA E. MARTIN IRA Account number 136865 if said IRA Account is in effect at the Insured's death, at PO Box 173785, Denver, CO 80217-3785. If said IRA Account is not in effect, such share will be payable to said LAINA E. MARTIN, if living, otherwise to the estate of said LAINA E. MARTIN.
CHECK PAYABLE TO: RAI FBO LAINA E. MARTIN, 136865



---

*Charles R. Sussman, Trustee*                                    Dated 03/26/99

Recorded at AMERITECH HEALTH PLANS:

_____                               Dated _____
Representative of AMERITECH HEALTH PLANS

3

**F**

**MetLife**
Metropolitan Life Insurance Company

EMPLOYER _____ *Sr3c*

## BENEFICIARY'S LIFE INSURANCE CLAIM STATEMENT

**In order to process your claim as quickly as possible, we need some information about you and about the insured. Each beneficiary must submit his or her own claim statement.**

### A. Information about you:

1. Your Name (please print or type)   *THE FIDELITY TRUST*
   First          Middle Initial          Last

2. Your ~~Social Security No.~~  TIN   *59-7066765*

3. Your Date of Birth _____  Your Sex _____ Male   _____ Female
   Mo.   Day   Year

4. Your Phone Number (in case we need to contact you)   Day ( ) _____
   *c/o FUTURE FIRST CONSERVATORSHIP*   Evening ( ) _____

5. Your Address   *1301 RIVERPLACE BLVD.  SUITE 1700A*
   Street No.   Street Name   Apt/Box # (if any)
   *JACKSONVILLE*   *FL*   *32207*
   City   State   Zip

6. Your relationship to the insured.   You are the: ___ Husband or Wife ___ Child
   X  Other  *BENEFACTOR*
   Explain

7. If you reside outside the United States, are you a U.S. Citizen? ☐ No ☐ Yes

### B. Information about the insured:

1. His/Her Name   *Paul*   *D*   *PAXTON*
   First   Middle Initial   Last

2. His/Her Residence Address   *3108*   *WICKLOW RD.*
   Street No.   Street Name   Apt/Box # (if any)
   *COLUMBUS*   *OH*   *43204*
   City   State   Zip

3. His/Her Marital Status ___ Single ___ Married ___ Widow/Widower ___ Separated ___ Divorced

4. His/Her Date of Birth  *MAY*   *21*   *1957*
   Mo.   Day   Year

---

**Under penalties of perjury, I certify that the number shown on this form is my correct taxpayer identification number, and that: (please check one)**

☐ the Internal Revenue Service (IRS) has notified me that I am subject to backup withholding as a result of a failure to report all interest or dividends, or

☑ I am not subject (or no longer subject) to backup withholding.
The IRS does not require your consent to any provision of this document other than the certifications to avoid backup withholding.

The information I have given is, to the best of my knowledge, true and accurate.

**METLIFE**

If the insured was covered under a policy issued in one of the states listed below, **or** if you reside in one of the states listed below, one of the following state warnings may apply to you.

JAN 2 1 2003

**New Jersey:** Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties.

GL-U 8

**Florida:** Any person who knowingly and with intent to injure, defraud or deceive any insurer files a statement of claim containing any false, incomplete or misleading information is guilty of a felony of the third degree.

**Virginia:** Any person who, with the intent to defraud or knowing that he is facilitating a fraud against an insurer, files a claim containing a false or deceptive statement may have violated state law.

If the insured was covered under a policy issued in any state other than those listed above, **or** if you reside in any state other than those listed above, then the following warning may apply to you:

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or a statement of claim containing any materially  false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

_____  *FOR DAVID M. LEVINE, CONSERVATOR*   *1/17/03*
Your signature   Date

**COMPOSITE EXHIBIT "F"**

JE2568.SCRE (02/01)

**Ohio Department of Health**
**VITAL STATISTICS**
# CERTIFICATE OF DEATH
TYPE OR PRINT IN PERMANENT BLACK INK

Reg. Dist. No. **25**
Primary Reg. Dist. No **2581**
**8354**
Registrar's No.

State File No

DO NOT WRITE IN
MARGIN
RESERVED FOR OSH
DATA CODING

**DECEDENT**

| 1. Decedent's Name (First, Middle, LAST) | 2. Sex | 3. Date of Death (Month, Day, Year) |
|---|---|---|
| Paul David Paxton | Male | 10/19/02 |

| 4. Social Security Number | 5a. Age-Last Birthday (Years) | 5b. Under One Year Months / Days | 5c. Under 1 Day Hours / Minutes | 6. Date of Birth (Month, Day, Year) | 7. Birthplace (City, Village and State or Foreign Country) |
|---|---|---|---|---|---|
| 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 | 45 | | | 5/21/57 | Zanesville, OH |

| 8. Was Decedent Ever in U.S. Armed Forces? | 9a. Place of Death (Check Only One) |
|---|---|
| ☐ Yes ☒ No | Hospital ☒ Inpatient ☐ ER/Outpatient ☐ DOA Other ☐ Nursing Home ☐ Residence ☐ Other (Specify) |

| 9b. Facility Name (If Not Institution, Give Street and Number) | 9c. City, Village, Twp., or Location of Death | 9d. County of Death |
|---|---|---|
| Riverside Hospital | Columbus, Ohio | Franklin |

| 10. Marital Status-Married, Never Married, Widowed, Divorced (Specify) | 11. Surviving Spouse (If Wife, Give Maiden Name) | 12. Decedent's Usual Occupation (Give kind of work done during most of working life. Do not use Retired) | 13. Kind of Business/Industry |
|---|---|---|---|
| Never Married | None | Coin Collector | Telephone |

| 13a. Residence-State | 13b. County | 13c. City, Town, Twp., or Location | 13d. Street and Number |
|---|---|---|---|
| Ohio | Franklin | Columbus | 3108 Wicklow Rd. |

| 13e. Inside City Limits? | 13f. ZIP Code | 14. Was Decedent of Hispanic Origin? (If Yes, Specify Cuban, Mexican, Puerto Rican etc.) | 15. Race-American Indian, Black, White, etc. (Specify) | 16. Decedent's Education Elementary/Secondary (0-12) / College (1-4 or 5+) |
|---|---|---|---|---|
| ☒ Yes ☐ No | 43204 | | White | 12th / 2 |

**PARENTS**

| 17. Father's Name (First, Middle, Last) | 18. Mother's Name (First, Middle, Maiden Surname) |
|---|---|
| Richard T. Paxton | Virginia M. Sullivan |

**INFORMANT**

| 19a. Informant's Name (Type/Print) | 19b. Mailing Address (Street and Number or Rural Route Number, City or Town, State, ZIP Code) |
|---|---|
| Steven Paxton | 3102 Ellis Place Columbus, Ohio 43204 |

**DISPOSITION**

| 20a. Method of Disposition | 20b. Place of Disposition (Name of Cemetery, Crematory, or Other Place) | 20c. Location City or Town, State |
|---|---|---|
| ☐ Burial ☒ Cremation ☐ Removal from State ☐ Donation ☐ Other (Specify) | Jerry Spears Crematory | Columbus, Ohio |

| 20d. Date of Disposition | 21a. Name of Embalmer (First, Middle, Last) | 21b. License Number |
|---|---|---|
| October 29, 2002 | None | None |

| 22a. Signature of Funeral Director or Other Person | 22b. License Number (of Licensee) | 23. Name and Address of Facility (Include City, State, and ZIP Code) |
|---|---|---|
| | 5772 | Jerry Spears Co. 2691 W. Broad St. Columbus, Ohio 43204 |

**REGISTRAR**

| 24. Registrar's Signature | 25. Date Filed (Month, Day, Year) | |
|---|---|---|
| | 10-24-02 | |

| 26a. Signature of Person Issuing Permit | 26b. Dist. No. | 27. Date Permit Issued |
|---|---|---|
| | 25 | 10-24-02 |

**CERTIFIER**

| 28a. Certifier (Check Only One) | ☒ Certifying Physician — To the best of my knowledge, death occurred at the time, date, and place, and due to the cause(s) and manner as stated |
|---|---|
| | ☐ Coroner — (On the basis of examination and/or investigation, in my opinion, death occurred at the time, date, and place, and due to the cause(s) and manner as stated) |

| 28b. Time of Death | 28c. Date Pronounced Dead (Month, Day, Year) | 28d. Was Case Referred to Coroner? |
|---|---|---|
| 9:25 M | 10/19/2002 | ☐ Yes ☒ No |

| 28e. Signature and Title of Certifier | 28f. License Number | 28g. Date Signed (Month, Day, Year) |
|---|---|---|
| | 1523.9 | 10/28/02 |

| 29. (Type/Print) Name (First, Middle, Last) and Address of Person Who Completed Cause of Death (Include City, State, ZIP Code) |
|---|
| Michael Weiss 929 Jasonway Ave. Suite B Columbus, Ohio 43214 |

**CAUSE OF DEATH**

Part I. Enter the diseases, injuries, or complications that caused the death. Do not enter the mode of dying, such as cardiac or respiratory arrest, shock, or heart failure. List only one cause on each line. Type or print in permanent black ink.

Immediate Cause
(Final disease or condition resulting in death) ➔ a. Sepsis   days

Sequentially list conditions, if any, leading to the immediate cause. Enter Underlying Cause (Disease or injury that initiated events resulting in death)
b. Due to (or as a Consequence of) HIV infection   years
c. Due to (or as a Consequence of)
d. Due to (or as a Consequence of)

Part II. Other significant conditions contributing to death but not resulting in the underlying cause given in Part I.

| 30a. Was an Autopsy Performed? | 30b. Were Autopsy Findings Available Prior to Completion of Cause of Death? |
|---|---|
| ☐ Yes ☐ No | ☐ Yes ☐ No |

**MANNER OF DEATH**

| 32. Manner of Death | 33a. Date of Injury (Month, Day, Year) | 33b. Time of Injury | 33c. Injury at Work? | 33d. Describe How Injury Occurred |
|---|---|---|---|---|
| ☐ Natural ☐ Pending Investigation ☐ Accident ☐ Suicide ☐ Could Not be ☐ Homicide Determined | | M | ☐ Yes ☐ No | |

| 33e. Place of Injury-At Home, Farm, Street, Factory, Office Building, etc. (Specify) | 33f. Location (Street and Number or Rural Route Number, City or Town, State) |
|---|---|

HEA 2771
5122 88 Rev 2/97

SEE INSTRUCTIONS ON REVERSE SIDE

# AUTHORIZATION

On August 9, 2002 an Order appointing David M. Levine as Conservator for the Future First Financial Group, Inc. and The Fidelity Trust was entered by the 7th Judicial Court, in and for St. Johns County, Florida, by the Honorable J. Michael Traynor.  A copy of the Order is available upon request.

David M. Levine, Conservator, hereby authorizes the release of any and all information pertaining to the life insurance policies as to which Future First Financial Group, Inc., The Fidelity Trust or The Fidelity Viatical Trust are listed as the owner to the following personnel:

Jack Brennan                          Tom Moran

Lisa Harrell                          Jane Moran

Terri Morris                          Sheri Townsend

Denise Robinson                                         **METLIFE**

Heidi Wasson                                           IJAN 2 1 2003

Stephanie Hardigree                                    **GLI - U - 8**

This authorization is indefinite and a facsimile or copy of the same is as binding as the original.

Dated this ___29___ day of ___October___, 2002.

David M. Levine

## LIMITED POWER OF ATTORNEY NON-QUALIFIED FUNDS

This Limited Power of Attorney shall convey by Purchaser NO OTHER AUTHORITY other than as stated hereinafter. This power of attorney may be terminated at any time by either party by Delivered Notice to that effect.

I, THE UNDERSIGNED PURCHASER, do hereby further constitute and appoint The Fidelity Trust & Trustee as my true and lawful attorney for myself and in my place and stead, and my attorney-in-fact as aforesaid is empowered to act for me to file, complete, and record any documents, and file all necessary documentation and administrative forms with the insurance company to effect the payment of the death benefit proceeds to me the beneficiary.

I hereby ratify and affirm all that my attorney-in-fact has done, shall do, or may cause to be done in accordance with the foregoing.

| PURCHASER *Barbara A. Gaughan* | DATE *1|11|99* | PURCHASER | DATE |

PRA# _125936_

## LIMITED POWER OF ATTORNEY QUALIFIED FUNDS

This special power of attorney shall convey by Purchaser NO OTHER AUTHORITY other than as stated hereinafter. This power of attorney may be terminated at any time by either party by Delivered Notice to that effect.

I, THE UNDERSIGNED PURCHASER, do hereby further constitute and appoint The Fidelity Trust & Trustee as my true and lawful attorney for myself and in my place and stead, and my attorney-in-fact as aforesaid is empowered to act for me to file, complete, and record any documents, and file all necessary documentation and administrative forms with the insurance company to effect the payment of the death benefit proceeds to the IRA, the beneficiary.

I hereby ratify and affirm all that my attorney-in-fact has done, shall do, or may cause to be done in accordance with the foregoing.

| DATE | PURCHASER |

IRA ACCT# _____

---

# FUTURE FIRST FINANCIAL GROUP

5000 SAWGRASS VILLAGE CIRCLE, SUITE 23 • PONTE VEDRA BEACH, FL 32082

### OFFICIAL RECEIPT

Date _1|11|99_

Received from _Barbara Gaughan_

_Seventeen Thousand Six Hundred Five — 66/100_

By _____
Signature of Authorized Agent

GA5224

This receipt is not valid unless countersigned by an Authorized Agent of the Company.

JAN 21 2009

*Randy Stelk*
Randy E. Stelk, President

## LIMITED POWER OF ATTORNEY NON-QUALIFIED FUNDS

This Limited Power of Attorney shall convey by Purchaser NO OTHER AUTHORITY other than as stated hereinafter. This power of attorney may be terminated at any time by either party by Delivered Notice to that effect.

I, THE UNDERSIGNED PURCHASER, do hereby further constitute and appoint The Fidelity Trust & Trustee as my true and lawful attorney for myself and in my place and stead, and my attorney-in-fact as aforesaid is empowered to act for me to file, complete, and record any documents, and file all necessary documentation and administrative forms with the insurance company to effect the payment of the death benefit proceeds to me the beneficiary.

I hereby ratify and affirm all that my attorney-in-fact has done, shall do, or may cause to be done in accordance with the foregoing.

| | |
|---|---|
| PURCHASER          DATE | PURCHASER          DATE |
| | PRA# 119382 |

## LIMITED POWER OF ATTORNEY QUALIFIED FUNDS

This special power of attorney shall convey by Purchaser NO OTHER AUTHORITY other than as stated hereinafter. This power of attorney may be terminated at any time by either party by Delivered Notice to that effect.

I, THE UNDERSIGNED PURCHASER, do hereby further constitute and appoint The Fidelity Trust & Trustee as my true and lawful attorney for myself and in my place and stead, and my attorney-in-fact as aforesaid is empowered to act for me to file, complete, and record any documents, and file all necessary documentation and administrative forms with the insurance company to effect the payment of the death benefit proceeds to the IRA, the beneficiary.

I hereby ratify and affirm all that my attorney-in-fact has done, shall do, or may cause to be done in accordance with the foregoing.

| | |
|---|---|
| DATE | PURCHASER |
| | IRA ACCT# |

METLIFE
JAN 21 2003
GLi-U-8

## LIMITED POWER OF ATTORNEY NON-QUALIFIED FUNDS

This Limited Power of Attorney shall convey by Purchaser NO OTHER AUTHORITY other than as stated hereinafter. This power of attorney may be terminated at any time by either party by Delivered Notice to that effect.

I, THE UNDERSIGNED PURCHASER, do hereby further constitute and appoint The Fidelity Trust & Trustee as my true and lawful attorney for myself and in my place and stead, and my attorney-in-fact as aforesaid is empowered to act for me to file, complete, and record any documents, and file all necessary documentation and administrative forms with the insurance company to effect the payment of the death benefit proceeds to me the beneficiary.

I hereby ratify and affirm all that my attorney-in-fact has done, shall do, or may cause to be done in accordance with the foregoing.

_____          X _____ 1-12-99
PURCHASER          DATE          PURCHASER          DATE

PRA# 150528

## LIMITED POWER OF ATTORNEY QUALIFIED FUNDS

This special power of attorney shall convey by Purchaser NO OTHER AUTHORITY other than as stated hereinafter. This power of attorney may be terminated at any time by either party by Delivered Notice to that effect.

I, THE UNDERSIGNED PURCHASER, do hereby further constitute and appoint The Fidelity Trust & Trustee as my true and lawful attorney for myself and in my place and stead, and my attorney-in-fact as aforesaid is empowered to act for me to file, complete, and record any documents, and file all necessary documentation and administrative forms with the insurance company to effect the payment of the death benefit proceeds to the IRA, the beneficiary.

I hereby ratify and affirm all that my attorney-in-fact has done, shall do, or may cause to be done in accordance with the foregoing.

_____          _____
DATE          PURCHASER

IRA ACCT# _____

# FUTURE FIRST FINANCIAL GROUP
## 814 HWY. A1A, SUITE 300 • PONTE VEDRA BEACH, FL 32082

### OFFICIAL RECEIPT

Received from  SEAN BARRETT SMITH          Date 1-12-99

TEN THOUSAND & 00/100          Dollars

By _____
Signature of Authorized Agent

This receipt is not valid unless countersigned by an Authorized Agent of the Company.

PRA # 150528
CHK # 1301

Randy Stelk
Randy E. Stelk, President

JAN 21 200
GLI-U-8

METLIFE

## LIMITED POWER OF ATTORNEY NON-QUALIFIED FUNDS

This Limited Power of Attorney shall convey by Purchaser NO OTHER AUTHORITY other than as stated hereinafter. This power of attorney may be terminated at any time by either party by Delivered Notice to that effect.

I, THE UNDERSIGNED PURCHASER, do hereby further constitute and appoint The Fidelity Trust & Trustee as my true and lawful attorney for myself and in my place and stead, and my attorney-in-fact as aforesaid is empowered to act for me to file, complete, and record any documents, and file all necessary documentation and administrative forms with the insurance company to effect the payment of the death benefit proceeds to me the beneficiary.

I hereby ratify and affirm all that my attorney-in-fact has done, shall do, or may cause to be done in accordance with the foregoing.

| James R. Ricci 1/12/99 | Florence A Ricci 1/12/99 |
| PURCHASER          DATE | PURCHASER          DATE |

PRA# _140 090_

## LIMITED POWER OF ATTORNEY QUALIFIED FUNDS

This special power of attorney shall convey by Purchaser NO OTHER AUTHORITY other than as stated hereinafter. This power of attorney may be terminated at any time by either party by Delivered Notice to that effect.

I, THE UNDERSIGNED PURCHASER, do hereby further constitute and appoint The Fidelity Trust & Trustee as my true and lawful attorney for myself and in my place and stead, and my attorney-in-fact as aforesaid is empowered to act for me to file, complete, and record any documents, and file all necessary documentation and administrative forms with the insurance company to effect the payment of the death benefit proceeds to the IRA, the beneficiary.

I hereby ratify and affirm all that my attorney-in-fact has done, shall do, or may cause to be done in accordance with the foregoing.

| _____ | _____ |
| DATE | PURCHASER |

IRA ACCT# _____

---

# FUTURE FIRST FINANCIAL GROUP

5000 SAWGRASS VILLAGE CIRCLE, SUITE 23 • PONTE VEDRA BEACH, FL 32082

### OFFICIAL RECEIPT

METLIFE

Date _1-12-99_

Received from _James R Ricci And Florence A Ricci_

JAN 21 2003

_Eight Thousand Dollars And 00/100 Cents_ Dollars

By _Richard A. Turas_

GLI-0-8

Signature of Authorized Agent

This receipt is not valid unless countersigned by an Authorized Agent of the Company.

_Randy Stelk_

Randy E. Stelk, President

## LIMITED POWER OF ATTORNEY NON-QUALIFIED FUNDS

This Limited Power of Attorney shall convey by Purchaser NO OTHER AUTHORITY other than as stated hereinafter. This power of attorney may be terminated at any time by either party by Delivered Notice to that effect.

I, THE UNDERSIGNED PURCHASER, do hereby further constitute and appoint The Fidelity Trust & Trustee as my true and lawful attorney for myself and in my place and stead, and my attorney-in-fact as aforesaid is empowered to act for me to file, complete, and record any documents, and file all necessary documentation and administrative forms with the insurance company to effect the payment of the death benefit proceeds to me the beneficiary.

I hereby ratify and affirm all that my attorney-in-fact has done, shall do, or may cause to be done in accordance with the foregoing.

| | |
|---|---|
| PURCHASER      DATE | PURCHASER      DATE |

PRA# _____

## LIMITED POWER OF ATTORNEY QUALIFIED FUNDS

This special power of attorney shall convey by Purchaser NO OTHER AUTHORITY other than as stated hereinafter. This power of attorney may be terminated at any time by either party by Delivered Notice to that effect.

I, THE UNDERSIGNED PURCHASER, do hereby further constitute and appoint The Fidelity Trust & Trustee as my true and lawful attorney for myself and in my place and stead, and my attorney-in-fact as aforesaid is empowered to act for me to file, complete, and record any documents, and file all necessary documentation and administrative forms with the insurance company to effect the payment of the death benefit proceeds to the IRA, the beneficiary.

I hereby ratify and affirm all that my attorney-in-fact has done, shall do, or may cause to be done in accordance with the foregoing.

| | |
|---|---|
| DATE | PURCHASER |

IRA ACCT# _____

METLIFE

JAN 2 1 2003

GL1-U-3

## LIMITED POWER OF ATTORNEY NON-QUALIFIED FUNDS

This Limited Power of Attorney shall convey by Purchaser NO OTHER AUTHORITY other than as stated hereinafter. This power of attorney may be terminated at any time by either party by Delivered Notice to that effect.

I, THE UNDERSIGNED PURCHASER, do hereby further constitute and appoint The Fidelity Trust & Trustee as my true and lawful attorney for myself and in my place and stead, and my attorney-in-fact as aforesaid is empowered to act for me to file, complete, and record any documents, and file all necessary documentation and administrative forms with the insurance company to effect the payment of the death benefit proceeds to me the beneficiary.

I hereby ratify and affirm all that my attorney-in-fact has done, shall do, or may cause to be done in accordance with the foregoing.

_John E. Jones_ _1-18-99_
PURCHASER          DATE

_____   _____
PURCHASER          DATE

PRA# _122439_

## LIMITED POWER OF ATTORNEY QUALIFIED FUNDS

This special power of attorney shall convey by Purchaser NO OTHER AUTHORITY other than as stated hereinafter. This power of attorney may be terminated at any time by either party by Delivered Notice to that effect.

I, THE UNDERSIGNED PURCHASER, do hereby further constitute and appoint The Fidelity Trust & Trustee as my true and lawful attorney for myself and in my place and stead, and my attorney-in-fact as aforesaid is empowered to act for me to file, complete, and record any documents, and file all necessary documentation and administrative forms with the insurance company to effect the payment of the death benefit proceeds to the IRA, the beneficiary.

I hereby ratify and affirm all that my attorney-in-fact has done, shall do, or may cause to be done in accordance with the foregoing.

_____   _____
DATE                PURCHASER

IRA ACCT# _____

---

# FUTURE FIRST FINANCIAL GROUP
### 5000 SAWGRASS VILLAGE CIRCLE, SUITE 23 • PONTE VEDRA BEACH, FL 32082

#### OFFICIAL RECEIPT

Received from _John E. Jones_          Date _1/18/99_

_$60,000_

By _____
   Signature of Authorized Agent

This receipt is not valid unless countersigned by an Authorized Agent of the Company.

JAN 21 2003

_Randy Stelk_
Randy E. Stelk, President

## LIMITED POWER OF ATTORNEY NON-QUALIFIED FUNDS

This Limited Power of Attorney shall convey by Purchaser NO OTHER AUTHORITY other than as stated hereinafter. This power of attorney may be terminated at any time by either party by Delivered Notice to that effect.

I, THE UNDERSIGNED PURCHASER, do hereby further constitute and appoint The Fidelity Trust & Trustee as my true and lawful attorney for myself and in my place and stead, and my attorney-in-fact as aforesaid is empowered to act for me to file, complete, and record any documents, and file all necessary documentation and administrative forms with the insurance company to effect the payment of the death benefit proceeds to me the beneficiary.

I hereby ratify and affirm all that my attorney-in-fact has done, shall do, or may cause to be done in accordance with the foregoing.

_____     _____        X _Lillian S Edge_ _1/18/99_
PURCHASER                   DATE                  PURCHASER        DATE

PRA# _135807_

## LIMITED POWER OF ATTORNEY QUALIFIED FUNDS

This special power of attorney shall convey by Purchaser NO OTHER AUTHORITY other than as stated hereinafter. This power of attorney may be terminated at any time by either party by Delivered Notice to that effect.

I, THE UNDERSIGNED PURCHASER, do hereby further constitute and appoint The Fidelity Trust & Trustee as my true and lawful attorney for myself and in my place and stead, and my attorney-in-fact as aforesaid is empowered to act for me to file, complete, and record any documents, and file all necessary documentation and administrative forms with the insurance company to effect the payment of the death benefit proceeds to the IRA, the beneficiary.

I hereby ratify and affirm all that my attorney-in-fact has done, shall do, or may cause to be done in accordance with the foregoing.

_____     _____
DATE                        PURCHASER

IRA ACCT# _____

---

# FUTURE FIRST FINANCIAL GROUP

5000 SAWGRASS VILLAGE CIRCLE, SUITE 23 • PONTE VEDRA BEACH, FL 32082

### OFFICIAL RECEIPT

Date _1 - 18 - 99_

Received from _Lillian S. Edge_

_Ten Thousand Dollars + Two_ Dollars

By _____
Signature of Authorized Agent

This receipt is not valid unless countersigned by an Authorized Agent of the Company.

_Randy Stelk_

Randy E. Stelk, President

JAN 2 1 2003

GLI-U-8

## LIMITED POWER OF ATTORNEY NON-QUALIFIED FUNDS

This Limited Power of Attorney shall convey by Purchaser NO OTHER AUTHORITY other than as stated hereinafter. This power of attorney may be terminated at any time by either party by Delivered Notice to that effect.

I, THE UNDERSIGNED PURCHASER, do hereby further constitute and appoint The Fidelity Trust & Trustee as my true and lawful attorney for myself and in my place and stead, and my attorney-in-fact as aforesaid is empowered to act for me to file, complete, and record any documents, and file all necessary documentation and administrative forms with the insurance company to effect the payment of the death benefit proceeds to me the beneficiary.

I hereby ratify and affirm all that my attorney-in-fact has done, shall do, or may cause to be done in accordance with the foregoing.

| _____ | 1-15-99 | _____ | 1/15/99 |
| PURCHASER | DATE | PURCHASER | DATE |

PRA# _128512_____

## LIMITED POWER OF ATTORNEY QUALIFIED FUNDS

This special power of attorney shall convey by Purchaser NO OTHER AUTHORITY other than as stated hereinafter. This power of attorney may be terminated at any time by either party by Delivered Notice to that effect.

I, THE UNDERSIGNED PURCHASER, do hereby further constitute and appoint The Fidelity Trust & Trustee as my true and lawful attorney for myself and in my place and stead, and my attorney-in-fact as aforesaid is empowered to act for me to file, complete, and record any documents, and file all necessary documentation and administrative forms with the insurance company to effect the payment of the death benefit proceeds to the IRA, the beneficiary.

I hereby ratify and affirm all that my attorney-in-fact has done, shall do, or may cause to be done in accordance with the foregoing.

| _____ | _____ |
| DATE | PURCHASER |

IRA ACCT# _____

---

# FUTURE FIRST FINANCIAL GROUP
### 5000 SAWGRASS VILLAGE CIRCLE, SUITE 23 • PONTE VEDRA BEACH, FL 32082

#### OFFICIAL RECEIPT

Date _1-15-99_

Received from _CARL ERNST AND_
_SHARON ERNST_
_TEN THOUSAND AND 00/100_

By _____
Signature of Authorized Agent

This receipt is not valid unless countersigned by an Authorized Agent of the Company.

METLIFE

JAN 21 2003

_Randy Stelk_

Randy E. Stelk, President

## LIMITED POWER OF ATTORNEY NON-QUALIFIED FUNDS

This Limited Power of Attorney shall convey by Purchaser NO OTHER AUTHORITY other than as stated hereinafter. This power of attorney may be terminated at any time by either party by Delivered Notice to that effect.

I, THE UNDERSIGNED PURCHASER, do hereby further constitute and appoint The Fidelity Trust & Trustee as my true and lawful attorney for myself and in my place and stead, and my attorney-in-fact as aforesaid is empowered to act for me to file, complete, and record any documents, and file all necessary documentation and administrative forms with the insurance company to effect the payment of the death benefit proceeds to me the beneficiary.

I hereby ratify and affirm all that my attorney-in-fact has done, shall do, or may cause to be done in accordance with the foregoing.

| PURCHASER | DATE | PURCHASER | DATE |
|---|---|---|---|

PRA# *135302*

## LIMITED POWER OF ATTORNEY QUALIFIED FUNDS

This special power of attorney shall convey by Purchaser NO OTHER AUTHORITY other than as stated hereinafter. This power of attorney may be terminated at any time by either party by Delivered Notice to that effect.

I, THE UNDERSIGNED PURCHASER, do hereby further constitute and appoint The Fidelity Trust & Trustee as my true and lawful attorney for myself and in my place and stead, and my attorney-in-fact as aforesaid is empowered to act for me to file, complete, and record any documents, and file all necessary documentation and administrative forms with the insurance company to effect the payment of the death benefit proceeds to the IRA, the beneficiary.

I hereby ratify and affirm all that my attorney-in-fact has done, shall do, or may cause to be done in accordance with the foregoing.

| DATE | PURCHASER |
|---|---|

IRA ACCT# _____

METLIFE

MAN 21 2003

GLI-U-8